EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------- X

In the Matter of the Application of

JOHN D. WHITFIELD,

                              Petitioner,      **VERIFIED ANSWER**

         -against-                         Index No. 101407/19

CITY OF NEW YORK ADMINISTRATION FOR
CHILDREN'S SERVICES,

                             Respondent,

For a Judgment Pursuant to Article 78 of the Civil Practice
Law and Rules.

---------------------------------------------------------------------- X

               Respondent, by its attorney, JAMES E. JOHNSON, Corporation Counsel for the

City of New York, as and for its Verified Answer to the Amended Verified Petition ("Amended

Petition"), respectfully alleges as follows:

               1.      Denies the allegations set forth in the first two unnumbered paragraphs on

pages one and two of the Amended Petition, except admits that Petitioner purports to proceed as

set forth therein and respectfully refers the Court to the provisions of law cited therein for a

complete and accurate statement of their contents.  Denies the allegations set forth in paragraph

"1" of the Amended Petition, except admits that Petitioner purports to proceed as set forth

therein and respectfully refers the Court to the provisions of law cited therein for a complete and

accurate statement of their contents.

               2.      Denies the allegations set forth in paragraph "2" of the Amended Petition,

except admits that Petitioner purports to set forth the basis of venue in this Court as set forth

therein.

EXHIBIT B
Case 1:20-cv-04674-JMF Document 23-2 Filed 08/14/20 Page 2 of 38

3.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "3" of the Amended Petition, except admits, upon information and belief, that Petitioner is over 18 years of age.

4.      Denies the allegations set forth in paragraph "4" of the Amended Petition, except admits that the New York City Administration for Children's Services ("ACS") is an agency of the City of New York, that ACS has offices located at 150 William Street, New York, NY 10038 and respectfully refers the Court to New York City Charter §§ 617 and 618 for a statement of the powers and duties of ACS.

5.      In response to paragraph "5" of the Amended Petition, Respondent repeats and realleges its responses to the allegations set forth in paragraphs "1" through "4" of the Amended Petition as if fully set forth herein.

6.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "6" of the Amended Petition.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "7" of the Amended Petition.

8.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "8" of the Amended Petition.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "9" of the Amended Petition.

10.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "10" of the Amended Petition.

11.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "11" of the Amended Petition, except admits that ACS

2

EXHIBIT B

Case 1:20-cv-04674-JMF   Document 25-2   Filed 09/14/20   Page 3 of 38

posted recruitment for the provisional title of Youth Development Specialist beginning in or around May 2018.

12.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "12" of the Amended Petition, except admits that Petitioner applied for the position of provisional Youth Development Specialist with ACS in the summer of 2018.

13.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "13" of the Amended Petition, except admits that Petitioner applied for the position of provisional Youth Development Specialist with ACS in the summer of 2018.

14.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "14" of the Amended Petition, except admits that Petitioner was interviewed at a YDS hiring fair and extended a conditional offer of employment on or around June 9, 2018.

15.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "15" of the Amended Petition.

16.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "16" of the Amended Petition, except admits that Petitioner provided Respondent with the results of a controlled substance test from Partners in Safety dated June 11, 2018 showing negative results for all test performed.

17.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "17" of the Amended Petition, except admits that

Petitioner submitted a Comprehensive Personnel Document (CPD-B) Affirmation dated June 15, 2018.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "18" of the Amended Petition.

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "19" of the Amended Petition.

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "20" of the Amended Petition, except admits that Petitioner reported to ACS Human Resources ("HR") for candidate processing on or about June 15, 2018.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "21" of the Amended Petition, except admits that Petitioner completed several forms in connection with his candidate processing.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "22" of the Amended Petition, except admits that Respondent sent a request for employment information to Council for Unity dated September 20, 2018, and received a response to the request dated September 28, 2018.

23.     Denies the allegations set forth in paragraph "23" of the Amended Petition, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that Petitioner called Ms. Starker.

24.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "24" of the Amended Petition.

Case 1:20-cv-04674-JMF   Document 25-2   Filed 05/14/20   Page 5 of 38

EXHIBIT B

25.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "25" of the Amended Petition.

26.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "26" of the Amended Petition.

27.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "27" of the Amended Petition.

28.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "28" of the Amended Petition.

29.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "29" of the Amended Petition.

30.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "30" of the Amended Petition.

31.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "31" of the Amended Petition, and respectfully refer the Court to the letter and accompanying exhibits from Petitioner to the Justice Center for the Protection of People with Special Needs dated August 14, 2018, annexed within Exhibit 1 to the Original Petition Department of Citywide Administrative Services ("DCAS") dated January 30, 2019, annexed hereto as Exhibit H, for a complete and accurate statement of their contents.

32.     Denies the allegations set forth in paragraph "32" of the Amended Petition, and respectfully refers the Court to the letter sent from the Justice Center for the Protection of People with Special Needs dated October 3, 2018, annexed to Respondent's Verified Answer as Exhibit G for a complete and accurate statement of its contents.

FILED: NEW YORK COUNTY CLERK 08/07/2020 12:53 PM        INDEX NO. 101407/2019
NYSCEF DOC. NO. 42     Case 1:20-cv-04674-JMF  Document 23-2   Filed 05/14/20   Page 6 of 38
                                                        RECEIVED NYSCEF: 08/07/2020

EXHIBIT B

33.     Denies the allegations set forth in paragraph "33" of the Amended Petition, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding "numerous phone calls" made to "various ACS officials" between December 2018 and March 2019.

34.     Denies the allegations set forth in paragraph "34" of the Amended Petition except denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning Petitioner's emotional state.

35.     Denies the allegations set forth in paragraph "35" of the Amended Petition, and respectfully refers the Court to Petitioner's New York State Division of Human Rights ("NYSDHR") Employment Complaint Form and its attached exhibits, annexed to the Original Petition as Exhibit 1, and collectively annexed hereto as Exhibit K, for a complete and accurate statement of its contents.

36.     Denies the allegations set forth in paragraph "36" of the Amended Petition, and respectfully refers the Court to Respondent's Verified Answer filed with the NYSDHR, annexed to the Original Petition as Exhibit 2, and collectively annexed hereto as Exhibit L, for a complete and accurate statement of its contents.

37.     Denies the allegations set forth in paragraph "37" of the Amended Petition, and respectfully refers the Court to Respondent's NYSDHR Verified Answer, annexed to the Original Petition as Exhibit 2, and to the Memorandum of Law in Support of Respondent's Cross-Motion to Dismiss the Petition filed with the Court on October 8, 2019, annexed hereto as Exhibits L and P respectively, for a complete and accurate statement of their contents.

38.     Denies the allegations set forth in paragraph "38" of the Amended Petition.

EXHIBIT B

Case 1:20-cv-04674-JMF Document 25-2 Filed 05/14/20 Page 7 of 38

39.    Denies the allegations set forth in paragraph "39" of the Amended Petition and respectfully refers the Court to the website links cited therein for a complete and accurate statement of their contents.

40.    Denies the allegations set forth in paragraph "40" of the Amended Petition.

41.    Denies the allegations set forth in paragraph "41" of the Amended Petition.

42.    Denies the allegations set forth in paragraph "42" of the Amended Petition, and respectfully refers the Court to Petitioner's New York State Division of Human Rights Verified Rebuttal, annexed to the Original Petition as Exhibit 3, and annexed hereto as Exhibit M, for a complete and accurate statement of its contents.

43.    Denies the allegations set forth in paragraph "43" of the Amended Petition.

44.    Denies the allegations set forth in paragraph "44" of the Amended Petition, and respectfully refers the Court to Petitioner's NYSDHR Amended Verified Rebuttal, annexed to the Original Petition as Exhibit 4, and annexed hereto as Exhibit N, for a complete and accurate statement of its contents.

45.    Denies knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph "45" of the Amended Petition.

46.    Denies the allegations set forth in paragraph "46" of the Amended Petition, and respectfully refers the Court to NYSDHR Order of Dismissal for Lack of Jurisdiction dated August 29, 2019, annexed to the Original Petition as Exhibit 5, and annexed hereto as Exhibit O, for a complete and accurate statement of its contents.

Case 1:20-cv-04674-JMF   Document 25-2   Filed 08/14/20   Page 8 of 38

EXHIBIT B

47.     Denies the allegations set forth in paragraph "47" of the Amended Petition, and respectfully refers the Court to the Notice of Petition and Verified Petition filed with this court on September 13, 2019, for a complete and accurate statement of their contents.

48.     Denies the allegations set forth in paragraph "48 of the Amended Petition, and respectfully refers the Court to Respondent's NYSDHR Verified Answer, annexed to the Original Petition as Exhibit 2, and to the Memorandum of Law in Support of Respondent's Cross-Motion to Dismiss the Petition filed with the Court on October 8, 2019, annexed hereto as Exhibits L and P respectively, for a complete and accurate statement of their contents.

49.     Denies the allegations set forth in paragraph "49" of the Amended Petition, and respectfully refers the Court to Petitioner's Addendum Affidavit in Support of Petitioner's Opposition to Respondent's Motion to Dismiss the Petition stamped "Received" by 71 Thomas Street Clerk's Office, Room 200, on November 12, 2019, for a complete and accurate statement of its contents.

50.     Denies the allegations set forth in paragraph "50" of the Amended Petition.

51.     In response to paragraph "51" of the Amended Petition, Respondent repeats and realleges its responses to the allegations set forth in paragraphs "1" through "50" of the Amended Petition as if fully set forth herein.

52.     Denies the allegations set forth in paragraph "52" of the Amended Petition except admits that Petitioner has two criminal convictions and Respondent respectfully refers the Court to Petitioner's Certificates of Disposition for a complete and accurate statement of his criminal convictions, annexed to hereto as Exhibit B, and to the provisions of law and to the case cited therein for a complete and accurate statement of their contents.

53.    Denies the allegations set forth in paragraph "53" of the Amended Petition, except admits that Petitioner met the minimum experience and education requirements for the position of Youth Development Specialist as described in the job posting under which he applied, and respectfully refers the Court to Petitioner's resume, annexed to the Original Petition within Exhibit 1, and collectively annexed hereto within Exhibit D, for Petitioner's statement as to his claimed experience and education.

54.    Denies the allegations set forth in paragraph "54" of the Amended Petition.

55.    Denies the allegations set forth in paragraph "55" of the Amended Petition.

56.    Denies the allegations set forth in paragraph "56" of the Amended Petition, and respectfully refers the Court to Respondent's NYSDHR Verified Answer, annexed to the Original Petition as Exhibit 2, and to the Memorandum of Law in Support of Respondent's Cross-Motion to Dismiss the Petition filed with the Court on October 8, 2019, annexed hereto as Exhibits L and P respectively, for a complete and accurate statement of their contents.

57.    Denies the allegations set forth in paragraph "57" of the Amended Petition.

58.    Denies the allegations set forth in paragraph "58" of the Amended Petition.

59.    Denies the allegations set forth in paragraph "59" of the Amended Petition.

60.    Denies the allegations set forth in paragraph "60" of the Amended Petition.

9

EXHIBIT B

Case 1:20-cv-04674-JMF   Document 23-2   Filed 09/14/20   Page 10 of 38

61.     Denies the allegations set forth in paragraph "61" of the Amended Petition.

62.     Denies the allegations set forth in paragraph "62" of the Amended Petition.

63.     Denies the allegations set forth in paragraph "63" of the Amended Petition.

64.     Denies the allegations set forth in paragraph "64" of the Amended Petition, and respectfully refers the court to the YDS Job Posting annexed hereto as Exhibit E, for a complete and accurate statement of its contents.

65.     Denies the allegations set forth in paragraph "65" of the Amended Petition.

66.     Denies the allegations set forth in paragraph "66" of the Amended Petition.

67.     Denies the allegations set forth in paragraph "67" of the Amended Petition.

68.     Denies the allegations set forth in paragraph "68" of the Amended Petition.

69.     Denies the allegations set forth in paragraph "69" of the Amended Petition.

70.     Denies the allegations set forth in paragraph "70" of the Amended Petition.

71.     Denies the allegations set forth in paragraph "71" of the Amended Petition and respectfully refers the Court to the case cited therein for a complete and accurate statement of its contents.

72.     Denies the allegations set forth in paragraph "72" of the Amended Petition.

73.     Denies the allegations set forth in paragraph "73" of the Amended Petition.

74.     Denies the allegations set forth in paragraph "74" of the Amended Petition.

75.     In response to paragraph "75" of the Amended Petition, Respondent repeats and realleges its responses to the allegations set forth in paragraphs "1" through "74" of the Amended Petition as if fully set forth herein.

76.     Denies the allegations set forth in paragraph "76" of the Amended Petition and respectfully refers the Court to the case cited therein for a complete and accurate statement of its contents.

77.     Denies the allegations set forth in paragraph "77" of the Amended Petition.

78.     Denies the allegations set forth in paragraph "78" of the Amended Petition.

79.     Denies the allegations set forth in paragraph "79" of the Amended Petition.

80.     Denies the allegations set forth in paragraph "80" of the Amended Petition.

INDEX NO. 101407/2019
RECEIVED NYSCEF: 08/07/2020

81.     The allegations set forth in paragraph "81" of the Amended Petition set forth a legal conclusion for which no response is required. To the extent a response is required, Respondent denies the allegations set forth in paragraph "81" of the Amended Petition.

82.     Denies the allegations set forth in paragraph "82" of the Amended Petition.

83.     Denies the allegations set forth in paragraph "83" of the Amended Petition.

84.     Denies the allegations set forth in paragraph "84" of the Amended Petition.

85.     Denies the allegations set forth in paragraph "85" of the Amended Petition.

86.     Denies the allegations set forth in paragraph "86" of the Amended Petition.

87.     Denies the allegations set forth in paragraph "87" of the Amended Petition.

88.     Denies the allegations set forth in paragraph "88" of the Amended Petition.

89.     In response to paragraph "89" of the Amended Petition, Respondent repeats and realleges its responses to the allegations set forth in paragraphs "1" through "88" of the Amended Petition as if fully set forth herein.

90.     Denies the allegations set forth in paragraph "90" of the Amended Petition.

91.     Denies the allegations set forth in paragraph "91" of the Amended Petition.

92.     Denies the allegations set forth in paragraph "92" of the Amended Petition, and respectfully refers the Court to Respondent's NYSDHR Verified Answer, annexed to the Original Petition as Exhibit 2, and to the Memorandum of Law in Support of Respondent's Cross-Motion to Dismiss the Petition filed with the Court on October 8, 2019, annexed hereto as Exhibits L and P respectively, for a complete and accurate statement of their contents..

93.     Denies the allegations set forth in paragraph "93" of the Amended Petition, and respectfully refers the Court to New York Penal Law § 240.08 for a complete and accurate statement of its contents.

94.     Denies the allegations set forth in paragraph "94" of the Amended Petition, respectfully refers the Court to Respondent's NYSDHR Verified Answer, annexed to the Original Petition as Exhibit 2, and the Memorandum of Law in Support of Respondent's Cross-Motion to Dismiss the Petition filed with the Court on October 8, 2019, annexed hereto as Exhibits L and P; and New York Judiciary Law §§ 476(A) and 485(A) for a complete and accurate statement of their contents.

95.     The allegations set forth in paragraph "95" of the Amended Petition set forth a legal conclusion for which no response is required.  To the extent a response is required, denies the allegations set forth in paragraph "95" of the Amended Petition, and respectfully refers the Court to the case cited therein for a complete and accurate statement of its contents.

96.     Denies the allegations set forth in paragraph "96" of the Amended Petition.

EXHIBIT B

97.     Denies the allegations set forth in paragraph "97" of the Amended Petition.

98.     Denies the allegations set forth in paragraph "98" of the Amended Petition.

99.     Denies the allegations set forth in paragraph "99" of the Amended Petition.

100.    Paragraph "100" of the Amended Petition sets forth a legal conclusion to which no responsive pleading is required.

101.    Denies the allegations set forth in paragraph "101" of the Amended Petition, and respectfully refers the court to New York Penal Law § 240.08 for a complete and accurate statement of its contents.

102.    Denies the allegations set forth in paragraph "102" of the Amended Petition.

103.    Denies the allegations set forth in paragraph "103" of the Amended Petition.

104.    Denies the allegations set forth in paragraph "104" of the Amended Petition.

105.    Denies the allegations set forth in paragraph "105" of the Amended Petition.

106.    Denies the allegations set forth in paragraph "106" of the Amended Petition.

107.    Denies the allegations set forth in paragraph "107" of the Amended Petition.

## FOR A STATEMENT OF THE PERTINENT AND MATERIAL FACTS, RESPONDENTS RESPECTFULLY ALLEGE AS FOLLOWS:[1]

**A.   New York State Raise The Age Legislation and the Creation of the Youth Development Specialist Position**

108.   On April 10, 2017, the Governor signed into law the State's "Raise The Age Law" ("RTA").  The RTA law amends and enacts various provisions of state law to raise the age of adult criminal responsibility in New York from age sixteen (16) to age eighteen (18).  *See* N.Y. Penal L. § 30.00.

109.   Pursuant to the RTA law, the holding or placement of anyone under the age of eighteen (18) in a correctional facility on Rikers Island is prohibited as of October 1, 2018:  *See* N.Y. Correct. L. § 500-p.

110.   Previously, criminally-charged 16 and 17 year olds were held in facilities on Rikers Island, in two (2) separate facilities, known as the Robert N. Davoren Center ("RNDC") and Rose M. Singer Center ("RMSC"), and were separated from inmates over the age of 18.   Affidavit of Joseph Cardieri sworn to on December 27, 2019 ("Cardieri Aff.") annexed hereto, ¶ 11.

111.   Under the RTA, these youth must be housed separate from all other persons aged eighteen (18) and older who are under the care, custody and control of the New York City Department of Correction ("DOC"), and are to be housed in Specialized Juvenile Detention Facilities ("SJDs"), jointly managed by DOC and ACS.  *See* N.Y. Correct. L. § 500-p.

112.   In New York City, the Administration for Children's Services ("ACS") provides secure detention services for vulnerable Juvenile Delinquents ("JDs"), Juvenile

---

[1] Please note that on certain exhibits annexed hereto, personally identifying material has been redacted to protect the privacy rights of non-parties to the litigation.

Offenders ("JOs"), and Adolescent Offenders ("AOs")[2] whose cases are pending in Family or Criminal Courts. Detention ensures that the young person appears in court on time while keeping the young person and the community safe. The court decides whether youth should be detained while their court cases are being resolved. "Cardieri Aff¶¶ 2-4.

113. Within ACS, the Division of Youth and Family Justice ("DYFJ") is responsible for maintaining the secure detention services for AOs, JDs, and JOs, and provides programming to address the therapeutic needs of young people in these facilities. Cardieri Aff. ¶ 3.

114. ACS, in conjunction with DOC, has designated Horizon Juvenile Center, in the Mott Haven section of the Bronx, as the SJD for New York City. Cardieri Aff. ¶ 13.

115. ACS also operates both a secure detention facility and a specialized secure detention ("SSD") facility at Crossroads Juvenile Center in Brownsville, Brooklyn. Cardieri Aff. ¶ 14.

116. While secure detention is typically reserved for youth who are alleged or adjudicated JOs and JDs, and who pose the highest risk or have been accused of committing serious offenses, SSDs are designed for housing youth designated as AOs. Cardieri Aff. ¶ 15.

117. In or around October 2018, all pre-RTA youth (sixteen and seventeen year olds who were detained at Rikers Island under the old law) were transferred to Horizon Juvenile

---

[2] A JD is a person who is under sixteen years old, but is at least seven years old, and commits an act which would be a "crime" if he or she were an adult, and is then found to be in need of supervision, treatment, or confinement. All juvenile delinquency cases are heard in Family Court. A JO is a youth who is thirteen, fourteen or fifteen years old and has been found guilty of a very serious felony. Juvenile offenders have their cases heard in the Youth Part of Supreme Court. *See* Affidavit of Kathleen Skowyra, sworn to on December 27, 2019, ¶¶ 6-7. Under the RTA law, 16 and 17 year-old offenders charged with felonies are now generally categorized as "Adolescent Offenders" ("AOs"), a new category of criminal defendant under the Criminal Procedure Law. *See* N.Y. Crim. Proc. L. § 1.20(44).

EXHIBIT B

Center (a designated SJD), which, at that time, was staffed with Correction Officers employed by the DOC. Cardieri Aff. ¶ 16.

118.     In October 2018, DOC provided all the direct care staff for Horizon Juvenile Center because ACS did not have sufficient staff at that time to care for the increased youth population in its facilities. Cardieri Aff. ¶ 17.

119.     Until June 2018, direct care in ACS's detention facilities was provided by Juvenile Counselors. Cardieri Aff. ¶ 18.

120.     In order to serve the increased population of youths in all ACS facilities as a result of the RTA, ACS and the New York City Department of Citywide Administrative Services ("DCAS") created new titles called Youth Development Specialist ("YDS") and Associate Youth Development Specialist ("AYDS"), replacing the previously existing civil service titles of Juvenile Counselor and Associate Juvenile Counselor. Cardieri Aff. ¶ 19.

121.     In 2018, ACS began recruiting applicants for the YDS position for placement at Crossroads Juvenile Center in Brownsville, Brooklyn. Cardieri Aff. ¶ 41.

122.     Since June 2019, ACS has also been transferring cohorts of trained YDS's into Horizon Juvenile Center to begin replacing DOC Correction Officers. Cardieri Aff. ¶ 20.

123.     The newly established YDS position is organizationally located within DYFJ. A YDS is responsible for supporting youths in all of their daily activities, including wake-up and bedtime routines, doing chores, eating regular meals, attending religious services, court dates, and health care visits, and visitation with family. Cardieri Aff. ¶ 21; YDS Job Posting, Exhibit ("Ex.") E, at 1; DCAS YDS Job Specifications, Ex. Q.[3]

---

[3] Petitioner annexed Respondent's New York State Division of Human Rights Verified Answer ("NYSDHR Answer") to the Original Petition in this proceeding as Exhibit 2 without any of the accompanying exhibits that Respondent originally filed with the New York State Division of

124.     YDS's work as part of an interdisciplinary team to provide secure, safe care, and skill-based therapeutic interventions for pre-adjudicated and post-adjudicated youth in juvenile detention facilities and other ACS operated or managed juvenile justice facilities and programs. Cardieri Aff. ¶ 22; Ex. E, at 1; Ex. Q.

125.     YDS and AYDS are tasked with facilitating youth learning of pro-social, academic, and vocational skills. They mentor and guide youth individually and in groups. They use a behavior management system to shape youth behavior, and encourage youth as they develop. They encourage youth and family communication and accompany youth in family visitations. They also advocate for youth and their families and facilitate youth group meetings in the residential unit and elsewhere. Cardieri Aff. ¶ 23; Ex. E, at 1; Ex. Q.

126.     In addition, YDS's address conflicts with crisis intervention methods such as verbal de-escalation, reframing strategies, and physical de-escalation techniques, using the least amount of physical intervention necessary. They may serve as part of a rapid response team to respond to emergency situations. YDS's work with youth gangs and provide remediation activities and provide anti-bullying and violence reduction intervention. Cardieri Aff. ¶ 24; Ex. E, at 1; Ex. Q.

127.     YDS's assist in the development of individualized and group treatment, programming, and safety plans. They provide supervision, structure and guidance to youth, in all settings. They follow all health protocols and safety and security protocols such as those concerning searches, headcounts, bed checks, intervention in volatile situations, the use of restraints, and others. They conduct searches as needed; establish ground rules and maintain protocols for the residential unit; reinforce youth behavior to support safety protocols; and assess

Human Rights. Respondent now annexes these exhibits to its Verified Answer herein as Exhibits A-H and its NYSDHR Answer as Exhibit L annexed hereto.

EXHIBIT B
Case 1:20-cv-04674-JMF   Document 23-1   Filed 09/14/20   Page 19 of 38

youths' needs and risks and develop individualized safety plans. Cardieri Aff. ¶ 25; Ex. E, at 1; Ex. Q.

128.    YDS's work with teachers and youth to support youth academic achievement. They facilitate, engage, and support youth in all activities, including school, wake-up and bedtime routines, meals, chores, recreation, religious services, court preparation, court attendance, family visits, health care visits and other activities as necessary. Cardieri Aff. ¶ 26.

129.    YDS's observe youth closely and record observations and complete required reports on attendance, incidents, and behavior management. Cardieri Aff. ¶ 27; Ex. E, at 1; Ex. Q.

130.    In addition, YDS accompany youth to court appearances and allay youths' anxieties. Cardieri Aff. ¶ 28; Ex. E, at 1; Ex. Q.

131.    As custodians for these at-risk youth, it is ACS's duty to ensure that any employees in these secure detention facilities meet both the minimum qualifications and any character and fitness requirements in dealing with a highly vulnerable population. Cardieri Aff. ¶ 29; Ex. E, at 1; Ex. Q.

132.    Among the minimum qualifications to become a YDS is a requirement that a candidate has two years of full-time satisfactory experience working directly with juveniles or young adults (ages 10-24) in a group, community, educational, or institutional setting or program performing recreational, detention, correctional, vocational, mentoring, or anti-violence work; or youth leadership development, young adult leadership development, youth and family health promotion, community organizing with youth and families, and/or closely related activities, which can include internships, volunteer work, athletic programs, or closely related experience. Ex. E, at 1.

EXHIBIT B

Case 1:20-cv-04674-JMF   Document 25-1   Filed 09/14/20   Page 20 of 38

133.     As stated above in ¶ 121, ACS began recruiting applicants for the YDS position for placement at Crossroads Juvenile Center in Brownsville, Brooklyn in 2018. Cardieri Aff. ¶ 41. Crossroads Juvenile Center is both a secure detention facility and a specialized secure detention ("SSD") facility, meaning it houses AOs, JOs, and JDs.

134.     A YDS placed in this facility would potentially interact with any of these populations. Cardieri Aff. ¶ 42. Although all YDS's hired in 2018 were initially posted at Crossroads, as explained in ¶ 122 above, YDS's were being transferred into Horizon Juvenile Center in the Bronx to replace DOC Correction Officers serving a direct care role to the AOs housed therein. Thus, a YDS must be able to serve the populations in any of the secured detention facilities administered by ACS. Cardieri Aff. ¶ 44.

**B.      The ACS Background Check Process For The YDS Position**

135.     Because a YDS works closely with such a vulnerable population, the character and fitness of each YDS candidate is closely scrutinized to ensure the safety and well-being of youths and the security and good order of the facilities in which they reside. Cardieri Aff. ¶ 31.

136.     In particular, ACS aims to hire "Credible Messengers" as often as possible – individuals who have been in contact with the criminal justice system but were subsequently rehabilitated and therefore able to motivate the most at-risk young people to successfully challenge and transform destructive thinking, attitudes and patterns of behavior. Cardieri Aff. ¶ 32.

137.     Applicants who report having a criminal conviction are subject to a series of background checks. First, ACS refers such applicants to the Justice Center for the Protection of People with Special Needs ("Justice Center") to check their name against the Staff Exclusion List ("SEL"). Cardieri Aff. ¶ 33.

20

Case 1:20-cv-04674-JMF   Document 23-2   Filed 09/14/20   Page 21 of 38

138.    The Protection of People with Special Needs Act, NY Executive Law, §§ 550, *et seq.*, standardizes and centralizes, in the Justice Center, the criminal history information check and suitability determination process for facilities or providers under the Justice Center mandate that are overseen by the Office of Mental Health, the Office for People With Developmental Disabilities and the Office of Children and Family Services ("OCFS"). *See* 14 NYCRR § 701.1.

139.    Because Crossroads Juvenile Center is overseen by OCFS and the YDS position entails regular and substantial unsupervised or unrestricted contact with residents of this secure detention facility, the position falls under the Justice Center's mandate. Cardieri Aff., at ¶ 33, n.1.

140.    The Justice Center Staff Exclusion List ("SEL") is a register of substantiated category one cases of abuse or neglect. *See* 14 NYCRR § 701.5(d); NY Social Services Law § 493(4)(a) (defining category one cases). The SEL contains the names of individuals found responsible for serious or repeated acts of abuse and neglect in New York State. Such individuals are prohibited from being hired by any agency or provider under the Justice Center's jurisdiction.

141.    If an applicant is not found on the SEL, the applicant is also referred to the Justice Center Criminal Background Check Unit ("Justice Center CBC Unit") pursuant to Title 14 of the NYCRR § 701.5 because the YDS position entails regular and substantial unsupervised or unrestricted physical contact with individuals receiving services from a provider (ACS) under the supervision of OCFS. Cardieri Aff. at ¶ 34.

142.    ACS also transmits such applicant's files to DCAS for a separate comprehensive background investigation. Cardieri Aff. ¶ 35.

Case 1:20-cv-04674-JMF   Document 23-1   Filed 09/14/20   Page 22 of 38

EXHIBIT B

143.     Under the New York City Human Rights Law ("NYCHRL"), as amended by Local Law 63 of 2015 (the Fair Chance Act), employers are prohibited from inquiring or making a statement about an employment applicant's record of arrests and criminal convictions until after the employer has extended a conditional offer of employment to the applicant. N.Y.C. Admin. Code § 8-107(11-a)(a).

144.     Pursuant to Section 8-107(11-a)(f)(2), the prohibition does not apply to an application for a position with the City of New York that the Commissioner of DCAS has determined entails the provision of services to or safeguarding of persons who, because of age, disability, infirmity or other condition, are vulnerable to abuse. The DCAS Commissioner has determined that these titles, also known as "Investigation before Appointment" ("IBA") titles, meet those conditions and are exempt from the prohibition pursuant to the N.Y.C. Admin. Code § 8-107(11-a)(f)(2).

145.     DCAS, or an agency to which it has delegated authority, conducts the investigations of IBA titles. The YDS title has been deemed an IBA title by DCAS. *See IBA Titles (10-3-18)*, NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES, (Dec. 29, 2019, 3:29 P.M.), https://www1.nyc.gov/assets/dcas/downloads/pdf/employment/iba_ti tles.pdf.

146.     When an applicant discloses a criminal conviction, they are also asked to submit a certificate of disposition for each conviction, character reference letters, and any other documentation they would like to provide in support of their application. These materials are reviewed by DCAS and the hiring agency (ACS). Cardieri Aff. ¶ 40.

Case 1:20-cv-04674-JMF   Document 23-1   Filed 09/14/20   Page 23 of 38

EXHIBIT B

147.    Finally, ACS convenes a Personnel Review Panel comprised of agency stakeholders to conduct its own character review and assessment, accounting for feedback from the Justice Center, DCAS, and other materials provided by the candidate. Cardieri Aff. ¶ 39.

148.    These Personnel Review Panels are ad hoc panels comprised of agency stakeholders, including representatives from ACS Office of the General Counsel, Personnel or Accountability and Audit, and the hiring program (in this case, DYFJ). Cardieri Aff. ¶ 47.

149.    While applicants were subject to the required background clearances described in ¶¶ 138-47 above, ACS retained discretion to make the final decision on who would be extended a final offer of employment. Cardieri Aff. ¶ 36.

150.    Background reviews by DCAS and the Justice Center can disqualify an applicant from the hiring agency's consideration, but a clearance under such a review does not serve as either a determination or a recommendation that the candidate should be hired. Cardieri Aff. ¶ 37.

151.    Indeed, it is Respondent's duty to thoroughly vet all candidates notwithstanding DCAS's and the Justice Center's determinations on whether an individual is qualified for the agency's consideration. Cardieri Aff. ¶ 38.

152.    Thus, it is Respondent that makes the final decision regarding whether an individual candidate will be hired. *See* Cardieri Aff. ¶¶ 1, 36.

C.    **Petitioner's Application to the Provisional YDS Title**

153.    In or around May 2018, ACS posted a provisional YDS title for placement at Crossroads Juvenile Center in Brownsville, Brooklyn. *See* Cardieri Aff. ¶¶ 41, 45.

154.    In or around May or June 2018, Petitioner applied for the posted provisional YDS title and was subsequently selected to participate in a YDS hiring fair held by ACS's Office of Human Resources ("HR"). *See* Cardieri Aff. ¶ 45.

23

155.     At a large hiring pool on June 9, 2018, Petitioner applied for a YDS position and was extended a conditional offer to a provisional YDS position, subject to multiple background checks. *See* Cardieri Aff. ¶ 45.

156.     When an applicant discloses a criminal conviction at this stage, they are also asked to submit a certificate of disposition for each conviction, character reference letters, and any other documentation they would like to provide in support of their application. These materials are reviewed by DCAS and the hiring agency (ACS). Cardieri Aff. ¶ 40.

157.     On June 11, 2018, the Justice Center notified HR that Petitioner was not included in the Staff Exclusion List, and authorizing ACS to formally request a check of Petitioner's criminal history background through the Justice Center CBC Unit. Ex. A.

158.     On or about June 15, 2018, Petitioner reported to HR for processing and provided two Certificates of Disposition: the first, dated March 30, 1988, for a conviction of criminal possession of a controlled substance in the third degree, and the second, dated November 15, 1989, for a conviction of murder in the second degree and criminal possession of a weapon in the second degree. Ex. B.

159.     On or about July 9, 2018, the Justice Center CBC Unit notified HR that it was in the process of reviewing Petitioner's fingerprint response. The email stated that the Justice Center's would contact Petitioner directly if more information was needed. Ex. C.

160.     On August 30, 2018, Petitioner sent an email to then-Director of HR Investigations at ACS. Susan Starker, stating: "Please find attached to this email, a PDF of the documents that I submitted to the Justice Center on or about August 14, 2018." Ex. I.

161.    Attached to the email was a letter dated August 14, 2018, from Petitioner to the Justice Center CBC Unit, detailing the contents of nine (9) exhibits submitted by Petitioner in support of his application to the YDS title.  *See* Ex. D, at 0001-0002.[4]

162.    The exhibits attached to Petitioner's letter to the Justice Center CBC Unit included, among other things:

a)  A Certificate of Disposition Indictment for Criminal Possession of a Controlled Substance, 3rd Degree, dated June 12, 2018;

b)  A Certificate of Disposition Indictment for Murder in the 2nd Degree, two counts of Criminal Possession of a Weapon in the 2nd Degree, and two counts of Criminal Possession of a Weapon in the 3rd Degree;

c)  A letter of reference from Sean Dino Johnson, Director of Program Marketing at Council for Unity;

d)  A letter of reference from Luis Brown, Director of School Based Initiative at Council for Unity;

e)  A letter of reference from Edward Harrison, Community Coordinator/Program Counselor at NYC DOC Youthful Offender Programming;

f)  A letter of reference from Petitioner's personal friend Wayne Harris;

g)  A letter of reference from Petitioner's cousin, Latasha Chante Gray, Assistant Principal at EBC High School for Public Service;

h)  A letter of reference from Jeffrey Deskovic, Founder and President of the Jeffrey Deskovic Foundation for Justice;

---

[4] Respondent has Bates stamped the individual pages of Exhibit D for ease of reference.

FILED: NEW YORK COUNTY CLERK 08/07/2020 12:53 PM    INDEX NO. 101407/2019
NYSCEF DOC. NO. 42    EXHIBIT D    RECEIVED NYSCEF: 08/07/2020

Case 1:20-cv-04674-JMF   Document 23-1   Filed 09/14/20   Page 26 of 38

i)   A letter of reference from F. Mateen Flores, Program Director at New

World Society, Inc.;

j)   A letter of reference from Tylon Washington, Petitioner's colleague at

Metropolitan Diploma Plus High School;

k)   A letter of reference from Jakwan Rivers, Chief Member Coordinator for

LEEBA;

l)   A letter of reference from Petitioner's attorney, Rita Dave;

m)  Petitioner's resume;

n)   Petitioner's transcript from Mercy College;

o)   Petitioner's transcript at New York Theological Seminary;

p)   Petitioner's transcript at Blackstone Career Institute;

q)   A personal essay published by PEN America entitled *The Whitfield Files*;

r)   Numerous certificates of appreciation and merit from organizations such

as Rehabilitation Through the Arts and The Alternatives to Violence

Project, Inc.

*See* Ex. D.

163.    An ACS Personnel Review Panel ("the Panel") was convened on multiple

occasions to review the applications of several YDS candidates to determine whether individuals

who reported criminal backgrounds would be selected to serve as a YDS.  Cardieri Aff. ¶ 46.

164.    On September 26, 2018, the Panel consisted of Joseph Cardieri, General

Counsel at ACS, Jennifer Fiellman, Esq., Assistant Commissioner in the Office of Agency

Accountability;; Kathleen Skowyra, Chief of Staff to the DYFJ Deputy Commissioner

(representing the hiring program, DYFJ); and Phoebe Rubenstein (née Rosen), Chief of Staff to

the First Deputy Commissioner at ACS, who joined the Panel as a non-voting facilitator. The Panel convened to review several applications, including Petitioner's. Cardieri Aff. ¶ 48.

165. The Panel reviewed and considered all of Petitioner's relevant application materials, including his Comprehensive Personnel Document (CPD-B), ACS-100 pre-employment application, and the supporting documentation described in above in ¶ 163. Cardieri Aff. ¶¶ 50-51.

166. After reviewing Petitioner's documentation, members of the panel discussed two concerns: Petitioner's lack of experience in daily, one-on-one care for youth in a residential setting, and concerns over statements made in Petitioner's memoir, *The Whitfield Files. See, e.g.,* Cardieri Aff. ¶¶ 53-71;, Affidavit of Kathleen Skowyra ("Skowyra Aff."), sworn to on December 27, 2019, annexed hereto, ¶¶ 52-69; Affidavit of Jennifer Fiellman ("Fiellman Aff.") sworn to on January 30, 2019, annexed hereto, ¶¶ 27-39.

167. First, members of the panel noted that the materials submitted by Petitioner reflected experience working with youth in large group settings and as a motivational speaker, but that he had no background in daily, one-on-one interaction, supervision, direct care, and/or accountability for youth. *See* Ex. D; Cardieri Aff. ¶¶ 53-71; Skowyra Aff. ¶ 53-54; Fiellman Aff. ¶ 38.

168. Despite two letters provided by representatives from the Council on Unity, it appeared to the Panel's reading, that Petitioner's involvement with that organization was mostly limited to interacting with youth in larger group settings, motivational speech presentations, and group discussions. Daily, one-to-one interaction, supervision, and counseling were not apparent in those roles. Cardieri Aff. ¶ 57.

FILED: NEW YORK COUNTY CLERK 08/07/2020 12:53 PM
NYSCEF DOC. NO. 42

EXHIBIT B

INDEX NO. 101407/2019

Case 1:20-cv-04674-JMF   Document 23-4   Filed 09/14/20   Page 28 of 38

RECEIVED NYSCEF: 08/07/2020

169.    Panel member Cardieri felt that it is imperative that a YDS has a solid background in providing daily, one-to-one care for youth in a residential setting. Group interaction, no matter how intense, cannot replace the daily march of relationship building, conversation, direction, and counsel that YDS routinely provides to individual youth as part of their daily responsibilities. Cardieri concluded that Petitioner lacked in this area. Cardieri Aff. ¶ 60.

170.    Those concerns were echoed by the representative from the hiring program, Ms. Kathleen Skowyra, who recalled that her impression of Petitioner's materials was that although he had worked as a motivational speaker and mentor to youth in large groups, "his job history did not include the kind of direct-care experience that the agency was seeking from YDS applicants." Skowyra Aff. ¶¶ 53-54.

171.    Ms. Skowyra elaborated on why Petitioner's experience was not sufficient, stating that "the YDS position is distinct from that of a community organizer – it is a hands-on job that requires getting youth up in the morning, getting them to school, putting them to bed, and other more direct-care roles." Skowyra Aff. ¶ 55.

172.    Experience in residential direct-care roles is essential because, as explained in ¶¶124-30 above, a YDS is responsible for, among other things, assisting youth in all of the activities of their daily life, including wake-up and bedtime routines, meals, educational and recreational activities, and therapeutic services. *See* Ex. E.

173.    On the same day that the Panel considered Petitioner's application, it also reviewed the application of a candidate ("M.H.") who had submitted a Certificate of Disposition for manslaughter. In contrast to Petitioner's application, M.H. demonstrated considerable

experience in supervising youth in a residential juvenile facility and was therefore hired as a YDS on April 21, 2019. *See* Ex. F.

174.    Indeed, Respondent provided a report of 130 candidates with criminal convictions who applied for the YDS position between June 2018 and July 2019. See Report of YDS Applicants with Conviction Records Hired or Not Hired, Ex. R. While ACS does not track candidates' conviction status, this list represents the candidates who applied to be a YDS and were subsequently investigated by DCAS when a fingerprint check disclosed a criminal conviction. Exhibit R lists all such candidates during the relevant time period who were found qualified for consideration by DCAS after such investigation.

175.    Of the 107 candidates with criminal convictions who were also cleared by the Justice Center, only four other candidates who remained interested were not appointed to YDS positions. One was denied on the basis of their criminal history, and the other three were denied based on insufficient experience or negative employment history. See Ex. R, at 6-7.

176.    Thus, between June 2018 and July 2019, ACS appointed at least 91 candidates with criminal convictions to the YDS position. See Ex. R, at 2-5.

177.    Second, the Panel was concerned with statements made in Petitioner's memoir entitled *The Whitfield Files*. After reading the memoir, members of the Panel felt that it "strong anti-law enforcement views, anti-prosecutorial views, and definitive positions related to perceived injustices in the criminal justice system," Cardieri Aff. ¶ 54, and that its tone was "conspiratorial, Skowyra Aff. at ¶ 58.The Panel, while taking no position on the accuracy of his commentary, did not believe that Petitioner's views would help advance ACS' mission to support and rehabilitate vulnerable youth involved in the criminal justice system. Cardieri Aff. ¶ 54.

EXHIBIT B
Case 1:20-cv-04674-JMF   Document 25-2   Filed 09/14/20   Page 30 of 38

178.    In addition Ms. Skowyra expressed concerns that, given Petitioner's background in motivational speaking, he could cause dissension were he to share the sentiments expressed in *The Whitfield Files* with the youth detained in ACS's secure facilities.  Skowyra Aff at ¶ 58.

179.    The Panel was also concerned that Petitioner's writings, in addition to his insistence that he was wrongfully convicted, called into question his ability to serve as a "Credible Messenger" in a way that would advance ACS's key objectives for youth.  Cardieri Aff. ¶ 55; Skowyra Aff. at ¶ 59-60.

180.    After reading and discussing Petitioner's writings, the Panel did not feel that Petitioner was expressing a message of positivity that would transform destructive thinking and attitudes.  The Panel felt that while a Credible Messenger admits fault and has the ability to reflect on personal responsibility, *The Whitfield Files* demonstrated a lack of reflection and a desire to shift blame to outside forces.  Cardieri Aff. ¶ 55.

181.    The stability of secure detention facilities is of paramount concern to Respondent.  The Agency has an incentive to staff the facilities with employees that will support the mission of rehabilitation of youth, and ensure the safety and well-being of the youth housed therein.  Cardieri Aff. ¶ 58; Skowyra Aff. at ¶ 62.

182.    By submitting *The Whitfield Files* in support of his application to become a YDS, Respondent understood that Petitioner was effectively re-affirming the views expressed therein.  Skowyra Aff. at ¶ 61.

183.    On September 27, 2018, Mr. Cardieri de-briefed ACS Commissioner David Hansell on the Panel's recommendation regarding Petitioner's application, including the bases for its recommendation.  The Commissioner agreed with the Panel's recommendation, and

also, "expressed concern over Petitioner's judgment in submitting *The Whitfield Files* for the agency's consideration, given the fact that it expressed clear anti-correctional statements as he sought a position counselling youth involved in a secure setting." Cardieri Aff. ¶ 65-67.

184.    Petitioner's writing therefore caused concern to Respondent on multiple fronts: potential disruption within Respondent's secure facilities, a disconnect between Petitioner's ideas regarding the criminal justice system and Respondent's mission in providing rehabilitative services to at-risk and vulnerable youth, questions concerning Petitioner's judgment in submitting a personal essay critical of the correction system while applying for a position working in a secured detention setting, and doubts as to whether Petitioner could effective serve as a "Credible Messenger." *See* Cardieri Aff. ¶ 58-59, 65-67.

185.    By email on October 3, 2018, the Justice Center CBC Unit notified ACS that Petitioner was cleared for consideration, but cautioned that "this determination does not constitute an opinion or recommendation as to whether this applicant should be hired for the position.  Action on this application is now within your discretion, consistent with all applicable laws and regulations . . . Please be advised that you remain responsible for taking any risk management steps you deem appropriate to ensure the health, safety, and welfare of your clients." Ex. G.

186.    By letter dated January 30, 2019, DCAS informed ACS that Petitioner had been "Qualified for Consideration."  Ex. H.

187.    DCAS informed ACS it was ultimately up to the agency to determine whether Petitioner fit within the ACS mission; the agency concluded that he did not. Cardieri Aff. ¶ 69.

188.    During the course of evaluating Petitioner's application, DCAS also prepared a written eight-factor analysis in accordance with New York Correction Law Article 23-A, a copy of which is annexed hereto as Exhibit J.

189.    On January 30, 2019, the Panel re-convened with Ms. Skowyra, as well as a representative from ACS Human Resources. After considering the results from both the Justice Center and DCAS, the Panel nonetheless determined that, based on Petitioner's lack of relevant work experience and concerns over statements made in *The Whitfield Files*, he would not be hired as a Youth Development Specialist at ACS. *See* Cardieri Aff. ¶ 70.

190.    The decision not to hire Petitioner was given the utmost consideration. As Mr. Cardieri explains, "This decision was not pre-ordained or made lightly. Far from it, it was made after many conversations within the Panel, including review and re-review of his recommendation letters, and writings. The Panel acknowledged that Petitioner has a compelling background and carefully reviewed his materials in order to thoroughly and thoughtfully consider his application. However, in the end, concerns over the stability of the secure detention facilities and the well-being of the vulnerable and impressionable youths housed therein compelled the Panel to find against recommending Petitioner as a YDS." Cardieri Aff. ¶ 63.

191.    Furthermore, the decision not to hire Petitioner was not made for discriminatory reasons. While the Panel was aware of Petitioner's conviction status, its conversation focused on his prior work experience, letters of reference, writings, and other materials that Petitioner submitted for the Panel's review. *See* Cardieri Aff. ¶ 52,; Skowyra Aff. at ¶ 51.

192.    Ultimately, the decision not to hire Petitioner was based solely on his lack of relevant daily, one-on-one direct-care experience in a residential setting, and concerns brought

EXHIBIT D

up around his writing in *The Whitfield Files* as described above in ¶ 185. *See* Cardieri Aff. ¶ 54-55, 57, 60; Skowyra Aff. at ¶ 64.

193.    On March 6, 2019, Petitioner filed a Verified Complaint with the New York State Division of Human Rights ("SDHR Complaint") alleging discrimination on account of his criminal conviction. Ex. L.

194.    In response, Respondent filed a Verified Answer to the SDHR Complaint on June 24, 2019. Ex. M.

195.    Petitioner filed a Verified Rebuttal to Respondent's Verified Answer to the SDHR Complaint on July 5, 2019. Ex. N.

196.    Thereafter, Petitioner filed an Amended Verified Rebuttal to Respondent's Verified Answer to the SDHR Complaint, sworn to on July 18, 2019. Ex. O.

197.    On August 29, 2019, the New York State Division of Human Rights dismissed Petitioner's SDHR Complaint for lack of jurisdiction. Ex. P.

198.    Petitioner commenced this proceeding on September 13, 2019.

199.    Petitioner served an Amended Petition in this proceeding on Respondent at oral arguments on November 26, 2019.

## FOR A FIRST DEFENSE

200.    The Amended Petition fails to state a cause of action upon which relief may be granted.

## FOR A SECOND DEFENSE

201.    Respondent's decision to not to hire Petitioner for a provisional YDS position was in all respects lawful, proper, reasonable, and was not arbitrary, capricious, or made in bad faith.    The record demonstrates a good faith rational basis for the Respondent's determination.

### FOR A THIRD DEFENSE

202.    Respondent had legitimate non-discriminatory reasons for its decision not to employ Petitioner as a YDS.

### FOR A FOURTH DEFENSE

203.    Petitioner failed to comply with applicable notice of claim requirements.

### FOR A FIFTH DEFENSE

204.    Even assuming that Petitioner engaged in speech protected by the First Amendment, and that such speech was a substantial or motivating factor in the decision to not to offer him employment, Respondent is not liable because it would have made the same decision in the absence of such speech.

### FOR A SIXTH DEFENSE

205.    Even assuming that Petitioner engaged in speech protected by the First Amendment, and that such speech was a substantial or motivating factor in the decision to not to offer him employment, Respondent is not liable because Petitioner's speech was likely to disrupt ACS activities and that the harm caused by the disruption outweighs the value of the Petitioner's expression.

### FOR A SEVENTH DEFENSE

206.    The statements about Petitioner alleged in the Amended Petition to have been made or published by Respondent are materially and substantially true, were published without malice and were not made with knowledge of any falseness, or with reckless disregard as to their truth or falsity.

### FOR AN EIGHTH DEFENSE

207.    Petitioner has failed to plead the particular words complained of in connection with causes of action one and four as required by CPLR § 3016(a).

34

EXHIBIT B

Case 1:20-cv-04674-JMF Document 23-1 Filed 09/14/20 Page 35 of 38

### FOR A NINTH DEFENSE

208.    Plaintiff has failed to plead any special damages.

### FOR A TENTH DEFENSE

209.    Respondent's statements cannot be considered defamatory on their face as they are non-actionable opinion.

### FOR AN ELEVENTH DEFENSE

210.    Respondent is entitled to an absolute or, in the alternative, a qualified privilege for the defamatory statements it is alleged to have made.

Case 1:20-cv-04674-JMF   Document 23-4   Filed 09/14/20   Page 36 of 38

EXHIBIT D

**WHEREFORE**, Respondent respectfully requests that the Amended Petition be dismissed in its entirety, that the relief requested be denied in all respects, that judgment be entered for Respondent, and that Respondent be granted such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              December 30, 2019

                              **JAMES E. JOHNSON**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Respondent
                              100 Church Street, Room 2-109(b)
                              New York, New York 10007
                              (212) 356-2441
                              brosenba@law.nyc.gov
                              awanslow@law.nyc.gov

              By:     _Bruce Rosenbaum_
                              Bruce Rosenbaum
                              Assistant Corporation Counsel

                              Angela M. Wanslow*
                              Assistant Corporation Counsel
                              *application for admission pending

TO:     John D. Whitfield (by First Class Mail)
        Petitioner Pro Se
        543 E. 108 Street, Apt. 1A
        Brooklyn, NY 11236
        (347) 355-9083
        johnwhitfield47l@gmail.com

Case 1:20-cv-04674-JMF   Document 23-1   Filed 09/14/20   Page 37 of 38

EXHIBIT D

## VERIFICATION

STATE OF NEW YORK          )
                           :   SS.:
COUNTY OF NEW YORK         )

       Tiffany Liu, being duly sworn, states that she is an attorney for the New York City Administration for Children's Services, that she has read the foregoing **VERIFIED ANSWER** in *John D. Whitfield v. The New York City Administration for Children's Services*, Index No. 101407/19, filed in the Supreme Court of the State of New York, County of NEW YORK, and knows the contents thereof to be true, except as to the matters therein alleged upon information and belief, and as to those matters, she believes them to be true, that the source of this information and the basis for her belief are the books and records of the New York City Administration for Children's Services, and information received from employees of the New York City Administration for Children's Services.

**TIFFANY LIU**

Sworn to before me this
30th day of December, 2019.

NOTARY

LAUREN GOODWIN
Commissioner of Deeds
City of New York No. 03-10134
Certificate Filed in New York County
Commission Expires September 01, 2020

37

EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of

JOHN D. WHITFIELD,

                                       Petitioner,

For a Judgment Pursuant to Article 78 of the Civil Practice
Law and Rules,

                     - against -

The NEW YORK CITY ADMINISTRATION FOR
CHILDREN'S SERVICES,

                                   Respondent.

## VERIFIED ANSWER

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Respondent*
*100 Church Street*
*New York, N.Y. 10007*
*Of Counsel:   Bruce Rosenbaum*
*                Angela Wanslow\**
*                \*Application for Admission Pending*
*Tel: (212) 356-2441*
*Matter #. 2019-062565*

*Due and timely service is hereby admitted.*

*New York, N.Y. ............................................................. , 201......*

*............................................................................., Esq.*

*Attorney for............................................................................*