No.  20-CV-04674 (JMF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN WHITFIELD,

Plaintiff,

-against-

CITY OF NEW YORK, officially;
JOSEPH CARDIERI, individually;
KATHLEEN SKOWYRA, individually;
JENNIFER FIELLMAN, ESQ, individually;
PHOEBE ROSEN, individually;
DAVID A. HANSELL, individually.

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-109*
*New York, N.Y.  10007*

*Of Counsel:  Angela M. Wanslow*
*Tel:  (212) 356-2441*
*Matter No.:  2020-024539*

Angela M. Wanslow,
Bruce Rosenbaum,
   Of Counsel.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS .............................................................................. 2

ARGUMENT .................................................................................................. 4

    POINT I ............................................................................................ 4

        RES JUDICATA AND COLLATERAL
        ESTOPPEL BAR PLAINTIFF FROM
        RELITIGATING HIS CLAIMS ............................................... 4

        A.   Plaintiff's Claims Are Barred By The Doctrine
            Of Res Judicata .................................................................. 4

        B.   Alternatively, Plaintiff's Claims Are Barred By
            The Doctrine Of Collateral Estoppel ................................... 7

    POINT II ........................................................................................... 8

        THE FAC FAILS TO STATE A PLAUSIBLE
        CLAIM OF FIRST AMENDMENT
        RETALIATION UNDER § 1983 ............................................. 8

        A.   Plaintiff Fails To Allege That Concern Over
            Potential Disruption Was Unreasonable ............................... 9

        B.   Plaintiff Fails To Allege The Requisite Causal
            Connection ......................................................................... 12

    POINT III .......................................................................................... 13

        THE FAC FAILS TO STATE A PLAUSIBLE
        CLAIM FOR MUNICIPAL LIABILITY UNDER
        § 1983 .................................................................................... 13

        A.   Plaintiff Fails To Plausibly Allege An Official
            Policy Or Custom .............................................................. 13

        B.   Plaintiff Fails To Plausibly Allege A Failure To
            Train Claim ....................................................................... 14

POINT IV .............................................................................................................. 16

    THE FAC FAILS TO STATE A CLAIM FOR
    SELECTIVE ENFORCEMENT ............................................................. 16

POINT V ............................................................................................................... 18

    THE INDIVIDUAL DEFENDANTS ARE
    ENTITLED TO QUALIFIED IMMUNITY ............................................ 18

POINT VI .............................................................................................................. 21

    THE FAC FAILS TO STATE A CLAIM FOR
    DISCRIMINATION UNDER THE NYSHRL AND
    THE NYCHRL ....................................................................................... 21

    A.   The City Followed The Procedural
        Requirements Of Article 23-A ............................................ 21

    B.   Plaintiff Failed To Allege Facts To Plausibly
        Plead A Causal Connection Between The
        Denial Of His Employment Application And
        His Conviction Status ......................................................... 22

CONCLUSION ...................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allen v. McCurry,*
    449 U.S. 90 (1980).................................................................................................4

*Amnesty America v. Town of W. Hartford,*
    361 F.3d 113 (2d Cir. 2004)...............................................................................14

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011)............................................................................................19

*Blackman v. New York City Transit Authority,*
    491 F.3d 95 (2d Cir. 2007)...................................................................................9

*Cash v. Cnty. of Erie,*
    654 F.3d 324 (2d Cir. 2011)...............................................................................14

*Castine v. Zurlo,*
    756 F.3d 171 (2d Cir. 2014).................................................................................8

*Chamberlain v. City of White Plains,*
    960 F.3d 100 (2d Cir. 2020)...............................................................................15

*City and County of San Francisco v. Sheehan,*
    575 U.S. 600, 135 S. Ct. 1765 (2015).................................................................19

*City of Los Angeles v. Heller,*
    475 U.S. 796 (1986)............................................................................................13

*Clissuras v. E.E.O.C.,*
    No. 89-cv-5869, 1990 U.S. Dist. LEXIS 16767 (S.D.N.Y. Dec. 10, 1990) ..............................5

*Corbett v. City of N.Y.,*
    No. 19-2152, 2020 U.S. App. LEXIS 17568 (2d Cir. June 4, 2020).......................................6

*Davidson v. Capuano,*
    792 F.2d 275 (2d Cir. 1986).................................................................................6

*DiFolco v. MSNBC Cable, L.L.C.,*
    622 F.3d 104 (2d Cir. 2010).................................................................................2

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018)..........................................................................................19

*Dukes v. City of N.Y.*,
    879 F. Supp. 335 (S.D.N.Y. 1995) ...............................................................13, 14

*Giacalone v. Abrams*,
    850 F.2d 79 (2d Cir. 1988)...........................................................................19

*Gorman v. Rensselaer Cty.*,
    910 F.3d 40 (2d Cir. 2018)...........................................................................20

*Hasenstab v. City of New York*,
    664 F. Supp. 95 (S.D.N.Y. 1987) ...................................................................5

*Jeffries v. Harleston*,
    52 F.3d 9 (2d Cir. 1995)..............................................................................9

*Jordan v. N.Y.C. Bd. of Elections*,
    816 F. App'x 599 (2d Cir. 2020) .................................................................17

*Lewis v. Cowen*,
    165 F.3d 154 (2d Cir. 1999), *cert. denied*, 528 U.S. 823 (1999).............................19

*Locurto v. Giuliani*,
    447 F.3d 159 (2d Cir. 2006)........................................................................8, 10

*Lucente v. Cty. of Suffolk*,
    No. 19-347, 2020 U.S. App. LEXIS 35964 (2d Cir Nov. 17, 2020) ......................13

*Maack v. 1199 SEIU Local*,
    638 F. App'x 66 (2d Cir. 2016) ....................................................................7

*Manfra v. Koch*,
    666 F. Supp. 637 (S.D.N.Y. 1987), *aff'd*, 868 F.2d 1267 (2nd Cir. 1988)..............5

*Melzer v Bd. of Educ.*,
    336 F.3d 185 (2d Cir. 2003)........................................................................12

*Merced v. Ponte*,
    807 F. App'x 127 (2d Cir. 2020) ..............................................................5, 6, 7

*Monell v. Dept. of Social Servs.*,
    436 U.S. 658 (1978)...........................................................................13, 14, 16

*Packard v. City of N.Y.*,
    No. 1:15-cv-07130 (AT) (SDA), 2019 U.S. Dist. LEXIS 189470 (S.D.N.Y.
    Oct. 30, 2019) .......................................................................................15, 16

*Pappas v. Giuliani,*
  290 F.3d 143 (2d Cir. 2002), *cert. denied sub nom. Pappas v. Bloomberg*, 539
  U.S. 958 (2003) ................................................................................................8, 11

*Pickering v Bd. of Educ.*,
  391 U.S. 563 (1968) .................................................................................................8

*Russo v. City of N.Y.*,
  705 F. App'x 38 (2d Cir. 2017) .............................................................................6

*Salvador v. Touro Coll. & Univ. Sys.*,
  749 F. App'x 39 (2d Cir. 2018) .............................................................................5

*Sulehria v. City of N.Y.*,
  670 F. Supp. 2d 288 (S.D.N.Y. 2009) .................................................................20

*Tower Props. LLC v. Vil. of Highland Falls*,
  No. 14-cv-04502 (NSR), 2015 U.S. Dist. LEXIS 88457 (S.D.N.Y. July 6,
  2015) ......................................................................................................................18

*Walker v. City of New York*,
  974 F.2d 293 (2d Cir. 1992) .................................................................................15

*Waters v. Churchill*,
  511 U.S. 661 (1994) .............................................................................................9, 12

*Weinstein v. Univ. of Conn.*,
  753 F. App'x 66 (2d Cir. 2018) ...........................................................................20

*Wheeler v. Natale*,
  178 F. Supp. 2d 407 (S.D.N.Y. 2001) ............................................................12, 13

*White v. Pauly*,
  137 S. Ct. 548 (2017) (per curiam) .....................................................................19

*Wright v. City of Syracuse*,
  611 F. App'x 8 (2d Cir. 2015) .............................................................................13

**State Cases**

*Aaron v. Aaron*,
  2 A.D.3d 942 (3d Dep't 2003) ...............................................................................5

*Acosta v. N.Y.C. Dep't of Educ.*,
  16 N.Y.3d 309 (2011) ...........................................................................................21

*Dempsey v New York City Dept. of Educ.*,
  25 N.Y.3d 291 (2015) ...........................................................................................21

*Griffin v. Sirva, Inc.*,
   29 N.Y.3d 174 (2017) ..........................................................................................21

*O'Brien v. Syracuse*,
   54 N.Y.2d 353 (1981) ........................................................................................5, 6

**Federal Statutes**

42 U.S.C. § 1983 ...................................................................................... *passim*

**State Statutes**

N.Y. Correct. L. § 753 ...........................................................................................21

N.Y. Correct. Law § 752 ........................................................................................21

N.Y. Correction Law § 755 ......................................................................................3

N.Y.C. Admin. Code § 8-107(10)................................................................1, 20, 21

N.Y. Civil Practice Law and Rules, Article 78.................................................. *passim*

N.Y. Correction Law, Article 23-A .........................................................21, 22, 23, 24

N.Y. Exec. L. § 296(15).........................................................................1, 20, 21

**Rules**

N.Y. Civil Practice Law and Rules, Article 78.................................................. *passim*

N.Y. Civil Practice Law and Rules, § 3211(a)(1)........................................................5

Federal Rules of Civil Procedure 12(b) .....................................................................2

**Constitutional Provisions**

U.S. Const. amend. XIV ......................................................................................1, 16

U.S. Const. amend. I ......................................................................................... *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

JOHN WHITFIELD,

                                        Plaintiff,

                                                        No.  20-CV-04674 (JMF)

                    -against-

CITY OF NEW YORK, *et. al.*

                                        Defendants.
------------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

        Plaintiff, a candidate for the provisional Youth Development Specialist ("YDS") position at the New York City Administration for Children's Services ("ACS"), brings this action pursuant to the First Amendment of the United States Constitution, 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").   In his First Amended Complaint (hereafter "FAC"),[1] Plaintiff alleges that Defendants allegedly (1) violated his First Amendment rights by making a hiring determination in part on the contents of his self-styled memoir, *The Whitfield Files*; (2) violated his right to equal protection under the Fourteenth Amendment by singling him out because of his prior murder conviction; (3) discriminated against him on the basis of his criminal conviction in violation of the NYSHRL and NYCHRL; (4 failed to train its employees on avoiding First

---

[1] Plaintiff commenced this action by filing a Complaint on June 16, 2020.  *See* Jun. 16, 2020 Compl., ECF Dkt. No. 1.  On September 14, 2020, Defendants moved to dismiss the original complaint.  *See* ECF Dkt. Nos. 24—27.  By order dated September 15, 2020, the Court directed Plaintiff to file any amended complaint by October 26, 2020, if Plaintiff believed that the pleading of additional facts would cure deficiencies identified in Defendants' motion to dismiss.  *See* ECF Dkt. No. 28.  The Court advised Plaintiff that he would not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss.  *See id.*  Plaintiff filed his First Amended Complaint on October 16, 2020.  *See* ECF Dkt. No. 30.

Amendment violations and otherwise implemented a discriminatory hiring policy, thus making the City of New York liable for Plaintiff's alleged Constitutional violations under § 1983.

As explained more fully below, Defendants now move to dismiss pursuant to F.R.C.P. 12(b) on the grounds that Plaintiff's claims are barred by the res judicata and collateral estoppel effect of the New York State Supreme Court's August 26, 2020 decision dismissing his prior Article 78 proceeding; that the individually named Defendants are entitled to qualified immunity; and that the Complaint otherwise fails to state a plausible claim.

## STATEMENT OF FACTS[2]

Plaintiff applied to become a provisional Youth Development Specialist ("YDS") with ACS on or around May 29, 2018 and subsequently attended an in-person interview on or around June 9, 2018, where he was extended a conditional offer to work as a provisional YDS subject to the outcome of several required background checks.  *See* First Am. Compl. ("FAC"), ECF Dkt. No. 30, ¶¶ 1—3, 25—26.  A criminal background check was conducted by the New York City Department of Citywide Administrative Services ("DCAS"), as well as the New York State Justice Center Criminal Background Check Unit. ("Justice Center CBC").  *See id.* ¶ 4.

During the background check process, Plaintiff submitted various materials to be considered by ACS, DCAS, and the Justice Center in conjunction with his employment application on August 14, 2018, including a self-style memoir entitled *The Whitfield Files*.  *See id.* ¶ 32.  Although Plaintiff disclosed a prior criminal conviction, including a murder conviction, *see id.* ¶ 1, DCAS conducted a thorough investigation and found him "qualified for consideration" for the YDS position on or around February 28, 2019.  *See id.* ¶¶ 4, 42.  An

---

[2] This statement of facts is derived from the allegations in the First Amended Complaint ("FAC"), ECF Dkt. No. 30. In addition, Defendants rely upon the exhibits annexed to the Dec. 4, 2020 Wanslow Decl.  *See DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  These exhibits are incorporated by reference into the First Amended Complaint.

independent review by the Justice Center CBC Unit also cleared Plaintiff for consideration.  *See id.* ¶ 38.

In addition to the background checks performed by DCAS and the Justice Center CBC, ACS convened a Personnel Review Panel ("the Panel"), including Defendants Joseph Cardieri, Kathleen Skowyra, Jennifer Fiellman, and Phoebe Rosen, to review the applications of candidates with a conviction status.  *See id.* ¶¶ 39.  The Panel met on or around September 27, 2018, to review Plaintiff's application, including the materials he had submitted to the Justice Center CBC Unit.  *See id.* ¶ 39.  After reviewing Plaintiff's application and materials, Defendants ultimately determined that Plaintiff would not be hired for the YDS position for two reasons.  *See id.*  First, the Panel felt that Plaintiff lacked experience in daily, one-on-one direct residential care with youth.  *See id.* ¶ 43.  Second, the Panel was concerned about what it perceived as strongly biased anti-law enforcement and anti-prosecutorial views expressed in Plaintiff's self-styled memoir, *The Whitfield Files*, which they believed conflicted with ACS's rehabilitative mission.  *See id.* ¶¶ 43, 88.

On or around September 11, 2019, Plaintiff filed a special proceeding in the Supreme Court of the State of New York, New York County, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), alleging that ACS's decision not to hire him was arbitrary and capricious and in violation of N.Y. Correction Law § 755.  *See id.* ¶ 50.  On or around November 12, 2019, Plaintiff thereafter amended his Article 78 Verified Petition to include a First Amendment claim.  *See id.* ¶ 44; Plf.'s Am. Verified Pet., *In the Matter of John Whitfield v. City of New York Administration for Children's Services*, (hereafter "*Whitfield v. ACS*"), Index No. 101407/2019, annexed to the Dec. 4, 2020 Decl. of Angela M. Wanslow ("Wanslow Decl.") as Ex. "A" ¶¶ 37—40, 47, 75—88.  ACS answered the Amended Verified

Petition on or around December 30, 2019.  *See* FAC ¶ 56; Def.s' Verified Ans. to Plf.'s Am. Verified Pet., *Whitfield v. ACS*, Index No. 101407/2019, NYSCEF Doc. No. 68, annexed to the Wanslow Decl. as Ex. "B."

On August 26, 2020, the New York Supreme Court, New York County, denied Plaintiff's Article 78 Petition,  *See* Aug. 26, 2020 Decision, Order, and J., NYSCEF Doc. No. 95, annexed to the Wanslow Decl. as Ex. "C."  The court found "no basis for the petitioner's claim that ACS discriminated against him on the basis of his prior criminal record or that his qualifications necessarily were superior to any of the successful applicants."  *See* Ex. "C," at 7. The court also "reject[ed] the petitioner's contention that ACS violated his First Amendment rights when it considered his published writings as a negative factor in evaluating his employment application."  *Id*. at 7—8.  Accordingly, the court dismissed Plaintiff's Article 78 Petition in its entirety.  *See* Ex. "C," at 10.  Plaintiff commenced this action on June 16, 2020, *see* ECF Dkt. No. 1, and filed a First Amended Complaint on October 16, 2020.  *See* ECF Dkt. No. 30.

## ARGUMENT

### POINT I

### RES JUDICATA AND COLLATERAL ESTOPPEL BAR PLAINTIFF FROM RELITIGATING HIS CLAIMS

**A.    Plaintiff's Claims Are Barred By The Doctrine Of Res Judicata**

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  New York has adopted a transactional analysis, which requires that " . . . once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based

upon different theories or if seeking a different remedy." *See O'Brien v. Syracuse*, 54 N.Y.2d 353, 357 (1981). Under New York law, a cause of action arises from the same transaction and is barred by the prior judgment, "where the same foundation facts serve as a predicate for each proceeding" and merely alleging a variation of the facts or seeking alternative relief will not justify subsequent litigation where the "same gravamen of the wrong" is at issue. *Hasenstab v. City of New York*, 664 F. Supp. 95, 98 (S.D.N.Y. 1987).

Here, Plaintiff's state court proceeding resulted in a final adjudication on the merits. *See* Ex. "C"; *Salvador v. Touro Coll. & Univ. Sys.*, 749 F. App'x 39, 41 (2d Cir. 2018) (a state trial court's dismissal on C.P.L.R. 3211(a)(1) or (a)(7) is a final judgment on the merits for res judicata purposes); *Merced v. Ponte*, 807 F. App'x 127, 128 (2d Cir. 2020) (Article 78 proceeding judgment is an adjudication on the merits for res judicata purposes). Although Plaintiff has appealed the dismissal of his Article 78 proceeding, "the pendency of an appeal from [a] judgment does not alter the finality or enforceability of that judgment." *Aaron v. Aaron*, 2 A.D.3d 942, 944 (3d Dep't 2003).

The prior proceeding involved the same adverse parties or those in privity with them: the individually-named defendants in this federal action were named as the decision-makers in the State court proceeding and are all officers of the same City agency involved in both the State proceeding and this federal action. *See Manfra v. Koch*, 666 F. Supp. 637, 640 n.12 (S.D.N.Y. 1987) (holding that there is privity for res judicata purposes between officers of the same government), *aff'd*, 868 F.2d 1267 (2nd Cir. 1988) (table); *Clissuras v. E.E.O.C.*, No. 89-cv-5869, 1990 U.S. Dist. LEXIS 16767, *3—4 (S.D.N.Y. Dec. 10, 1990) ("Government agencies are in privity where, as here, a party loses an action with a government agency and then seeks to relitigate the same issues with a second, related government agency.").

Finally, the claims in both the prior State court proceeding and this action arise from the same underlying events: Defendants' consideration of Plaintiff's candidacy for a YDS position with ACS.  In both this federal action and the prior State court proceeding, Plaintiff claims that the Defendants discriminated against him on the basis of his criminal conviction and violated his First Amendment rights by using his self-styled memoir, *The Whitfield Files*, as a partial basis for not hiring him.  *See* FAC ¶¶ 74—154; 168—86; Ex. "A" ¶¶ 51—74; 75—88. Thus, there is no doubt that Plaintiff's instant claims "aris[e] out of the same transaction or series of transactions" as the prior State court proceeding.  *O'Brien*, 54 N.Y.2d at 357.

Although some courts have held that Article 78 judgments are not entitled to res judicata effect where the relief sought in the subsequent action was not available to be obtained in the prior Article 78 proceeding, *see, e.g.*, *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986), more recent cases have allowed res judicata effect of Articles 75 and 78 judgments generally as well as in "hybrid proceedings" seeking both Article 78 relief and broader relief for constitutional violations.  *See Merced*, 807 F. App'x at 128 (upholding dismissal on res judicata grounds where prior Article 78 proceeding was adjudicated on the merits and claims asserted below were, or could have been, raised in the prior state court action); *Russo v. City of N.Y.*, 705 F. App'x 38 (2d Cir. 2017) (granting res judicata effect to Article 75 decision affirming termination of special education teacher); *Corbett v. City of N.Y.*, No. 19-2152, 2020 U.S. App. LEXIS 17568, at *4—7 (2d Cir. June 4, 2020).

Plaintiff's Amended Verified Petition in the prior state court proceeding asserted not only Article 78 claims but plenary claims for violation of his First Amendment rights and for defamation.  See Ex. "A" ¶¶ 37—47, 75—88, 89—106.  Plaintiff sought not only equitable relief in the form of an order directing that he be appointed as a YDS with back pay, but also

compensatory damages for violation of his putative Free Speech rights and damage to his reputation. *See* Ex. "A" ¶¶ 88, 105—106, Ad Damnum Clause ¶ 3. Inasmuch as the State court could have awarded Plaintiff the same relief he seeks in this action if it had found his claims to have merit, the prior Article 78 judgment has res judicata effect in this action and bars all claims in this action that were raised or could have been raised in the prior state court proceeding. *See Merced*, 807 F. App'x at 128.

**B.      Alternatively, Plaintiff's Claims Are Barred By The Doctrine Of Collateral Estoppel**

Alternatively, "Under New York law, issue preclusion applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Maack v. 1199 SEIU Local*, 638 F. App'x 66, 68 (2d Cir. 2016) (internal citations omitted). Here, collateral estoppel bars Plaintiff from relitigating all of the claims asserted in this action.

First, Plaintiff is estopped from arguing that Defendants' reliance on *The Whitfield Files* as a partial basis for their decision not to hire him violated his First Amendment rights to freedom of speech. This issue was actually and necessarily decided on the merits in his prior Article 78 proceeding, in which the court rejected "petitioner's contention that ACS violated his First Amendment rights when it considered his published writings as a negative factor in evaluating his employment application." Ex. "C," at 7—8. Second, Plaintiff is also barred from relitigating the issue of whether Defendants discriminated against him based on his prior criminal conviction. To this point, the state court specifically noted that there is "no basis for the [Plaintiff's] claim that ACS discriminated against him on the basis of his prior criminal record or that his qualifications necessarily were superior to any of the successful applicants." *Id.* at 7. Finally, as evidenced by the allegations in the FAC and the state court record, Plaintiff

had a full and fair opportunity to litigate his First Amendment retaliation and discrimination claims during his Article 78 proceeding.  *See, e.g.,* FAC ¶¶ 42—72.  Accordingly, collateral estoppel bars Plaintiff from relitigating all of the claims asserted in this action.

## POINT II

### THE FAC FAILS TO STATE A PLAUSIBLE CLAIM OF FIRST AMENDMENT RETALIATION UNDER § 1983

For the purpose of this motion, Defendants treat Plaintiff's speech as speech by an employee: Defendants' research did not locate any cases involving a First Amendment retaliation claim brought, as in this case, by a non-employee candidate for public employment.[3]  Defendants argue herein that the facts of this case are similar to the line of cases dealing with off-duty speech by a public employee, which applied a *Pickering* balancing analysis.  *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *see, e.g., Pappas v. Giuliani*, 290 F.3d 143, 146—147 (2d Cir. 2002) (upholding police officer's termination for disseminating racist and anti-semitic materials where NYPD had a reasonable concern the officer's actions would impair its ability to perform its mission, thus outweighing plaintiff's free speech interest), *cert. denied sub nom. Pappas v. Bloomberg*, 539 U.S. 958 (2003); *Locurto v. Giuliani*, 447 F.3d 159, 178 (2d Cir. 2006) (rejecting free speech claim by NYPD and FDNY employees terminated for participating in racist Labor Day parade float); *Castine v. Zurlo*, 756 F.3d 171, 176 (2d Cir. 2014) (rejecting free speech claim by Election Commissioner who alleged she was impermissibly retaliated against during her candidacy for Town Justice).

---

[3] Here, the issue of Plaintiff's speech as set forth in *The Whitfield Files* arises not from its publication as a "work of nonfiction" in 2005, but rather as part of Plaintiff's employment application submission to be considered for public employment.  For this reason and the others articulated *infra* in Point V, the individually named Defendants are entitled to qualified immunity.

Defendants assume, for the purpose of this motion only, that Plaintiff's speech was on a matter of public concern and their decision not to hire Plaintiff constitutes an adverse employment action.   However, the FAC fails to plausibly allege that Defendants' hiring determination was made in retaliation for his speech rather than out of a reasonable concern of disruption in ACS's secure detention facilities, and that this concern was insufficient to outweigh the value of his speech.  Further, Defendants' would not have hired Plaintiff even in the absence of his speech because of his lack of relevant work experience, and Plaintiff has failed to sufficiently allege that this reason was pretextual.  As such, Plaintiff fails to state a claim for First Amendment retaliation under § 1983.

## A.      Plaintiff Fails To Allege That Concern Over Potential Disruption Was Unreasonable

When a plaintiff's speech on a matter of public concern is sufficiently disruptive to government operations such that the disruption outweighs the value of the speech, a public employer may take an adverse employment action.  *See Waters v. Churchill*, 511 U.S. 661, 672 (1994); *Blackman v. New York City Transit Authority*, 491 F.3d 95 (2d Cir. 2007).  *Waters* permits public employers to take an adverse employment action "for speaking on a matter of public concern if: (1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech."  *See Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir. 1995) (citing *Waters*, 511 U.S. at 673).

Even where no *actual* disruption has occurred, a government employer may act to prevent potential disruption if the employer believes it is likely to interfere with government operations.   *Waters*, 511 U.S. at 672-74; *Jeffries*, 52 F.3d at 12.   "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate," and there is no need "for an employer to allow events to

unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Locurto*, 447 F.3d at 182 (quoting *Connick v Myers*, 461 U.S. 138, 152 (1983) (internal quotations omitted)).

Here, Defendants acted out of a reasonable concern that Plaintiff's writings indicated an inability to perform the job duties of a YDS and the potential to disrupt the agency's mission for serving the extremely at-risk and vulnerable youth populations housed within its secured detention facilities. *See* FAC ¶¶ 57—60, 87—90, 125—125.  The sentiments expressed in *The Whitfield Files* raised concerns that Plaintiff might share his strongly-held beliefs regarding the criminal justice system (either consciously or unconsciously) in a way that would jeopardize the rehabilitative process. *See id.* ¶ 125.  Further, Defendants had doubts about Plaintiff's ability to engage in the kind of thoughtful introspection required to act as a Credible Messenger to the youth in his care. *See id.* ¶¶ 89, 108.  As such, Defendants, "while taking no position on the accuracy of [Plaintiff's] commentary, did not believe that Petitioner's views—if expressed by him, or discovered by discerning youth—would help advance ACS' mission to support and rehabilitate vulnerable youth, involved in the criminal justice system." *See id.* ¶ 88.

Plaintiff alleges that Defendants "misrepresented the content of this protected speech when [they] insisted that it exhibited 'anti' police, prosecutorial, establishment and correctional views without specifically explaining how the two excerpts, and the memoir as a whole, support such an extreme conclusion." *See id.* ¶ 91.  Plaintiff painstakingly analyzes two excerpts that Defendants cited in their prior state court papers in an effort to establish that *The Whitfield Files* was not generally anti-police, anti-correctional, anti-prosecutorial, anti-establishment, or otherwise hostile. *See id.* ¶¶ 92—99.  However, Plaintiff's allegation rests on the conclusory premise that Defendants were acting in bad faith – to the extent of lying in sworn

statements – in order to misconstrue the contents of his memoir.  Plaintiff alleges no facts to support his allegation that Defendants fabricated these concerns *post hoc* in order to justify their alleged First Amendment retaliation.

Plaintiff also alleges that Defendants' concerns over *The Whitfield Files* were unreasonable because they failed to take into consideration that his memoir was written fifteen years ago.  *See id.* ¶ 119.  However, Defendants noted that it was Plaintiff's decision to submit *The Whitfield Files* (which, in their opinion, was anti-correctional in nature) in conjunction with his application to be a YDS in a secured detention facility that caused them concern. *See id.* ¶ 118.  Plaintiff's reliance on *Pappas* is misplaced: while the "where and when" of speech may be a factor in evaluating the likeliness of the speech to cause harm, "[n]o talismanic or determinative significance attaches to it."  *Pappas*, 290 F.3d at 150.  It is irrelevant that Plaintiff's memoir was written fifteen years ago because Defendants did not independently discover *The Whitfield Files* and use it to make their determination: rather, Plaintiff willingly submitted it to be considered by Defendants in making their employment decision. *See* FAC ¶ 32.

Finally, Plaintiff alleges that Defendants' interpretation of *The Whitfield Files* was unreasonable in light of his alleged experience as a youth counselor.  *See id.* ¶¶ 120, 126—28. Plaintiff alleges that Defendants should have known he would never proselytize to youth within ACS's facilities because "it is universally inappropriate for a youth counselor to discuss the crimes a youth is facing."  *See id.* ¶ 126.  Even accepting as true the dubious premise that an experienced youth counselor is incapable of indiscretion, as explained *infra* in Point VI(B), Defendants had concerns about Plaintiff's prior work experience and believed that "his materials did not evidence any extended one-on-one daily experiences counseling or working with youth."

*See id.* ¶ 132.  It was therefore not objectively unreasonable for Defendants to believe that an applicant with inadequate counseling experience and a background as a motivational speaker might relay the strongly-held opinions expressed in *The Whitfield Files* to the youth in his care. *See, e.g., Melzer v Bd. of Educ.*, 336 F.3d 185, 199 (2d Cir. 2003) (concern over an employee's ability to fulfill the duties of his job is sufficient is a reasonable prediction of disruption).

**B.     Plaintiff Fails To Allege The Requisite Causal Connection**

The FAC fails to plausibly allege that Defendants retaliated against Plaintiff because of his speech as opposed to a reasonable concern of disruption in their secured detention facilities or other concerns regarding his work experience.  *See generally*, FAC.  Defendants evaluated *The Whitfield Files* solely as a means of evidence of Plaintiff's ability to serve as a YDS.  *See* FAC ¶ 88.  Plaintiff's attempt to substitute his own opinion of the effect *The Whitfield Files* should have on a reader is more speculation, and as such insufficient to state a claim for First Amendment retaliation.

As explained *supra* in Point VI(B), Defendants' employment decision was not motivated solely by Plaintiff's writings.  Defendants had "serious concerns regarding [Plaintiffs] qualifications to serve as a YDS" based on the nature of his prior work experience, *see id.* ¶¶ 61, 132, and while it is clear that Plaintiff disagrees with Defendants' evaluation of his work experience, his own opinion of his qualifications to serve as a YDS is irrelevant to the causation analysis.  In First Amendment retaliation cases, "the causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action. That is to say, the adverse employment action *would not have been taken* absent the employee's protected speech."  *Wheeler v. Natale*, 178 F. Supp. 2d 407, 410—11 (S.D.N.Y. 2001) (internal citations omitted) (emphasis added); *see also Waters*, 511 U.S. at 681—82. Because the FAC fails to plausibly allege that, notwithstanding *The Whitfield Files*,

Plaintiff would have been hired despite a lack of relevant work experience, it must be dismissed. *Wheeler*, 178 F. Supp. 2d at 410—11.

## POINT III

### THE FAC FAILS TO STATE A PLAUSIBLE CLAIM FOR MUNICIPAL LIABILITY UNDER § 1983

**A.      Plaintiff Fails To Plausibly Allege An Official Policy Or Custom**

As a preliminary matter, a municipality cannot be held liable under § 1983 where no constitutional violation or violation of federal law has occurred.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Wright v. City of Syracuse*, 611 F. App'x 8, 12 (2d Cir. 2015) (where plaintiff failed to establish individual liability on his claims of discrimination, retaliation, hostile work environment, and deprivation of due process, his claim of liability against the City for these purported violations fails as a matter of law).  Because the Complaint fails to state a plausible claim that the individual Defendants violated Plaintiff's First Amendment rights, as explained *supra* in Point II, or his right to Equal Protection as explained *infra* in Point IV, it also fails to state a *Monell* claim.  *See Dukes v. City of N.Y.,* 879 F. Supp. 335, 344 (S.D.N.Y. 1995) (when individual defendants have committed no constitutional violations, the municipality cannot be found liable).

"To hold a municipality liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cty. of Suffolk*, No. 19-347, 2020 U.S. App. LEXIS 35964, at *29 (2d Cir Nov. 17, 2020) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690—91 (1978) (internal quotations and alterations omitted).

First, Plaintiffs allegations that the Defendant City has imposed a policy of not hiring individuals with a prior murder conviction is speculative and unsupported by the few facts that Plaintiff is able to allege – namely, that Defendants made vague inadmissible hearsay public statements that they were reviewing their hiring policy. *See, e.g.,* FAC ¶¶ 6, 35, 210. Second, Plaintiff fails to allege facts sufficient to plead a causal connection between his conviction status and Defendants' hiring decision. Defendants proffered two legitimate and non-discriminatory reasons for not hiring Plaintiff, and the FAC fails to allege facts sufficient to plead that those reason were pretextual. Third, because the FAC fails to state a plausible claim that the individual Defendants violated Plaintiff's First Amendment rights, as explained *supra* in Point II, it also fails to state a *Monell* claim. *See Dukes,* 879 F. Supp. at 344 (when individual defendants have committed no constitutional violations, the municipality cannot be found liable).

## B.      Plaintiff Fails To Plausibly Allege A Failure To Train Claim

Plaintiff also alleges that Defendant City failed to train its employees on "the lawful use of protected activities as a basis for denying a candidate employment," and that this failure resulted in a violation of his First Amendment right to freedom of speech. *See* FAC ¶¶ 187—204. A municipality's inaction (e.g., failure to train) may be a cognizable *Monell* claim if it rises to the level of an official policy or custom. *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). To be liable for its inaction under a failure to train theory, Plaintiff must adequately allege that Defendant City was deliberately indifferent to its employees' constitutional deprivations. *Id.* As such, "[t]he operative inquiry is whether [the] facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (citations omitted).

The Second Circuit applies a three-pronged test for demonstrating deliberate indifference in the context of a failure to train claim. Plaintiffs must show that: 1) the City knew

to a moral certainty that it would confront a given situation; 2) there was a history of the City mishandling the situation; and 3) the wrong choice by the City would frequently cause the deprivation of Plaintiffs' rights. *Packard v. City of N.Y.*, No. 1:15-cv-07130 (AT) (SDA), 2019 U.S. Dist. LEXIS 189470, at *9—10 (S.D.N.Y. Oct. 30, 2019) (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992); *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007)).

The FAC alleges, in a conclusory manner, that Defendants knew "to a moral certainty" that ACS hiring personnel would have to make employment decisions on the basis of protected speech, but does not allege any specific facts to support this contention. *See* FAC ¶ 194; *cf. City of Canton*, 489 U.S. at 390, n.10 (noting that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons"). The FAC also fails to allege any prior incidents of Defendants violating a candidate's First Amendment rights by considering their protected speech during employment deliberations. *See generally,* FAC. Indeed, Plaintiff's situation was unique and "a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events." *Walker*, 974 F. 2d at 297. *See Chamberlain v. City of White Plains*, 960 F.3d 100, 115 (2d Cir. 2020) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Finally, the FAC does not allege that this nature of constitutional deprivation will frequently occur if left unchecked. While Plaintiff lists a number of cases generally involving First Amendment speech, none of these cases involve Defendant City's failure to hire a candidate on the basis of their protected speech. *See* FAC ¶ 201, n.30.

"In addition to a showing of deliberate indifference, Plaintiff[] also must 'identify a specific deficiency in the [C]ity's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Packard*, 2019 U.S. Dist. LEXIS 189470, at \*9—10 (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)); *Canton*, 489 U.S. at 391 ("for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury"); *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007)).   The FAC does not allege any specific deficiency: rather, it broadly alleges that ACS has failed to train its employees on First Amendment obligations.  *See* FAC ¶¶ 195—99.  Plaintiff alleges that ACS's response to his FOIL request[4] is an admission that "ACS hiring personnel do not undergo any training before they are permitted to make hiring decisions."  S*ee id.* ¶ 192.  However, whether ACS had any specific documents responsive to his broadly worded FOIL request to a single City agency (ACS) is not probative of whether the City is deliberately indifferent to training needs.

The FAC therefore fails to allege any plausible facts to support a *Monell* claim under § 1983 and thus his claims against Defendant City should be dismissed.

**POINT IV**

**THE FAC FAILS TO STATE A CLAIM FOR SELECTIVE ENFORCEMENT**

As a preliminary matter, Defendants note that Plaintiff's selective enforcement claim is barred by the doctrines of res judicata and collateral estoppel as explained in Point I *supra*.  Moreover, the FAC also fails to state a plausible claim that Defendants violated his right

---

[4] Plaintiff made a request to ACS under the New York Freedom of Information Law to provide him with, "All training manuals, guidelines, records, reports, documents, memorandums, etc., that articulate the training ACS employees undergo before they are permitted to make hiring decisions . . . [and] that articulate the training ACS employees undergo that ensure that its employees are aware of and incompliance [sic] with federal and state constitutional provisions."  *See* FAC ¶ 53.  ACS responded "[a] diligent search for records responsive to your request did not locate any such records."  *Id.* at ¶ 68.

to equal protection of the law under the Fourteenth Amendment by treating him differently from other similarly situated applicants to the YDS position by singling him out on the basis of his criminal conviction.  To state a "selective enforcement" equal protection claim, a plaintiff must allege that he was selectively treated "compared with others similarly situated" and that "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *See Jordan v. N.Y.C. Bd. of Elections*, 816 F. App'x 599, 603—604 (2d Cir. 2020).

First, Plaintiff fails to allege facts identifying any similarly situated comparators. Plaintiff alleges that during the state court proceedings Defendants proffered "a computer readout sheet that listed numerous candidates that had criminal convictions, where some got the job, and others declined to accept the job."  *See* FAC ¶ 157; Report of YDS Applicants with Conviction Records Hired or Not Hired, annexed to the Wanslow Aff. as Ex. "D."  As explained in Defendants' state court Verified Answer, the "computer readout" that Defendants produced is a report of 130 candidates who applied to the YDS position between June 2018 and July 2019 and were investigated and "cleared for consideration" by DCAS after disclosing a prior criminal conviction.  *See* Ex. "B" ¶ 174; Ex. "D."  The report contains no information regarding the candidates' prior work experience or the severity of the underlying conviction.  *See id.*  Thus, Plaintiff merely speculates that these candidates are similarly situated to him.  Further, even accepting as true that none of the candidates listed on the report have been convicted of murder, the report lists several candidates who were *not* ultimate hired, thus refuting Plaintiff's allegation that he was single out because of his murder conviction.  *See* Ex. "D," at 7—8.

Likewise, Plaintiff speculates that candidates "M.H."[5] and candidate Jeffrey Rivera are similarly situated to him but alleges no facts regarding their background or work experience to sufficiently plead his theory.  *See* FAC ¶¶ 157, 178, n.26.  Plaintiff has pleaded that candidate "M.H." (or "HW") was hired and has a prior conviction for manslaughter, *see id.* ¶ 157, and that Rivera has a prior conviction for murder and has "has not received a response from ACS, either denying or granting him the YDS job."[6]  *See id.* ¶ 178, n.26.  Plaintiff has therefore failed to allege even the least stringent standard of similarity required by courts to state a claim for selective enforcement.  *See, e.g., Tower Props. LLC v. Vil. of Highland Falls*, No. 14-cv-04502 (NSR), 2015 U.S. Dist. LEXIS 88457, at *21 (S.D.N.Y. July 6, 2015) (requiring a plaintiff to plead that comparators are similarly situated in all material respects).

Second, as explained *infra* in Point VI(B), Plaintiff has failed to allege facts sufficient to plead that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations."  *Tower Props*, 2015 U.S. Dist. LEXIS 88457, at *23. Plaintiff's theory that Defendants developed a new hiring protocol excluding all individuals with a murder conviction is pure unsupported speculation which, however conceivable, is not supported by allegations nudging it to plausible.  *See Twombly*, 550 U.S.at 570.  As such, Plaintiff's selective enforcement claim must be dismissed.  *See id.*

### POINT V

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

---

[5] While the FAC actually refers to "HW," Defendants assume that Plaintiff is referring to "MH" – the only candidate with a prior manslaughter conviction who was specifically referenced in the state court proceedings.  *See* Ex. "B" ¶ 173.
[6] Upon information and belief, Defendants hired Jeffrey Rivera as a YDS on November 9, 2020, and he is currently at the Training Academy.

As explained *supra* in Points I and II, Plaintiff's First Amendment claim is precluded by the prior State court decision and Plaintiff has otherwise failed to state a plausible claim upon which relief may be granted that Defendants violated his First Amendment rights to freedom of speech.  However, even assuming, *arguendo*, that Plaintiff has stated a cognizable First Amendment claim, the individual Defendants are entitled to qualified immunity because their use of his protected speech in order to make an employment determination was not clearly established as a violation of constitutional law.

Plaintiff is not **required** to find "a case directly on point for a right to be clearly established;" however there must be some "existing precedent [that has] placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks, citation, and brackets omitted).  That precedent "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality," *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1775-76 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)), emphasizing that "clearly established law must be 'particularized' to the facts of the case," *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Second Circuit has applied that principle in First Amendment retaliation cases, consistently rejecting attempts to define the constitutional right in general or abstract terms.  *See, e.g., Lewis v. Cowen*, 165 F.3d 154, 166-67 (2d Cir. 1999) ("relevant inquiry is not

whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech"), *cert. denied*, 528 U.S. 823 (1999); *Giacalone v. Abrams*, 850 F.2d 79, 85 (2d Cir. 1988) (determination that "a public employee retains First Amendment rights" is . . . "too general to be controlling in the qualified immunity inquiry").

Here, Plaintiff broadly alleges, in a conclusory manner, that his right to be free from retaliation for exercising First Amendment speech is clearly established. *See, e.g.,* FAC ¶ 81. First, the discreet constitutional question at issue here is whether Defendants should have known that making an adverse employment determination on the basis of a speech submitted with Plaintiff's employment application materials would violate the First Amendment. Second, Plaintiff cites no controlling case law establishing that a public employer may not rely on such speech to make an employment decision. Third, a reasonable Defendant would understand that any materials willingly submitted by an applicant could be used to make such a determination. "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Sulehria v. City of N.Y.*, 670 F. Supp. 2d 288, 322 (S.D.N.Y. 2009) (quoting *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003). It was objectively reasonable for Defendants to believe they acted lawfully and constitutionally when they considered Plaintiff's speech in weighing whether or not he would be able to adequately perform the duties of a YDS. *See Gorman v. Rensselaer Cty.*, 910 F.3d 40 (2d Cir. 2018); *Weinstein v. Univ. of Conn.*, 753 F. App'x 66, 68 (2d Cir. 2018). Thus, the individual Defendants should therefore be entitled to qualified immunity and all claims against them dismissed.

**POINT VI**

**THE FAC FAILS TO STATE A CLAIM FOR DISCRIMINATION UNDER THE NYSHRL AND THE NYCHRL**

As a preliminary matter, Defendants note that Plaintiff's NYSHRL and NYCHRL claims of discrimination are barred by the doctrines of res judicata and collateral estoppel as explained in Point I *supra*.  Moreover, the FAC also fails to state a plausible claim that Defendants discriminated against Plaintiff on the basis of his criminal conviction in violation of Article 23-A of the New York Correction Law § 752, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296(15), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(10), by refusing to hire him.  *See* FAC ¶ 171.

"A cause of action [under Article 23-A] arises only if a person is denied employment by a particular employer because of a prior criminal conviction *and* the employer did not follow the procedure to determine whether an exception applies."  *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 183 (2017) (emphasis in original); *see Dempsey v. New York City Dept. of Educ.*, 25 N.Y.3d 291 (2015); *Acosta v. N.Y.C. Dep't of Educ.*, 16 N.Y.3d 309, 314—315 (2011).

**A.     The City Followed The Procedural Requirements Of Article 23-A**

As an initial matter, Plaintiff concedes that Defendants satisfied the procedural requirements of Article 23-A by performing the 8-factor analysis required by the statue via DCAS. *See* N.Y. Correct. L. § 753;  FAC ¶¶ 4, 38 n.6.  Since the plain language of the statute requires Plaintiff to plead both a causal connection between the denial of his employment application and his conviction status *and* a failure to adhere to the procedural requirements of the statute, Plaintiff thus fails to state a claim for violation of Article 23-A.  *See Griffin*, 29 N.Y.3d at 183.

**B.   Plaintiff Failed To Allege Facts To Plausibly Plead A Causal Connection Between The Denial Of His Employment Application And His Conviction Status**

However, even if Defendants had failed the procedural prong of Article 23-A, Plaintiff has also failed to plead sufficient facts to allege that Defendants did not hire him "on the basis of" his underlying murder conviction.  First, as alleged in the FAC, Defendants declined to hire Plaintiff because he lacked direct care experience with youth in a residential setting. *See* FAC ¶ 43.   After reviewing his application materials, Defendants noted that Plaintiff's experience was primarily interacting with "youth in larger group settings," motivational speaking, and leading group discussions, but that "daily, one-to-one interaction, supervision, and counselling was not apparent in those roles."  *See* FAC ¶ 132.  Defendants also described the importance of experience in a direct care role, observing that "the YDS position is distinct from that of a community organizer."  *See id.*  Despite the state court's finding that "there is no basis for the petitioner's claim that ACS discriminated against him on the basis of his prior criminal record or that his qualifications necessarily were superior to any of the successful applicants," *see* Ex. "C," at 7, Plaintiff alleges that Defendants' analysis of his prior work experience must be pretextual because Defendants "completely ignored a myriad of evidence that proved their assertion [that he lacked relevant experience] was false, arbitrary, capricious and totally baseless."  *See* FAC ¶ 131.

Plaintiff alleges that Defendants did not give sufficient weight to various aspects of his prior work experience and educational background when making their determination.  *See, e.g.,* FAC ¶¶ 57, 57 n.10, 131—37, 197.  Plaintiff's theory is based completely on his own speculation of what Defendants considered and whether the appropriate amount of significance was attached to each document of his employment application.  In addition to concerns about Plaintiff's prior work experience, Defendants "expressed concern over [Plaintiff's] judgment in submitting *The Whitfield Files* for the agency's consideration, given the fact that it expressed clear anti-correctional

statements as he sought a position counseling youth in a secure setting." *See* FAC ¶ 58. As pleaded in the FAC, Defendants were "concerned that the message [Plaintiff] might send to youth was that because the system was 'rigged' against them they did not need to play by the rules." *See id.* ¶ 90. Defendants had an overarching concern that Plaintiff might "create dissension and unease in the juvenile detention facilities, undermining facility goals for the youth," and that Plaintiff's "strongly-held positions about the deficits of the criminal justice system might adversely affect (either consciously or unconsciously) his interactions with the youth he would be supervising." *See id.* ¶ 125.

Defendants also noted that *The Whitfield Files* raised concerns about Plaintiff's ability to serve as a "Credible Messenger," an individual who had experience with the criminal justice system but, through self-reflection on personal accountability, transforms destructive thinking and attitudes in at-risk youth. *See id.* ¶¶ 89, 108. After reading *The Whitfield Files*, Defendants did not regard Plaintiff as contrite or reflective; rather, their perception was that his memoir reflected a desire to shift blame onto outside forces rather than engage in thoughtful introspection. *See id.* Defendants were concerned that Plaintiff's history as a motivational speaker would give him a platform to amplify these messages, which they believed ran counter to the agency's mission. *See id.* ¶¶ 132, 136. Defendants were also concerned that Plaintiff might "misinterpret his role and articulate to vulnerable youth his strong opinions regarding the criminal justice system failings, anti-police bias, as reflected in his writings in 2006." *See id.* ¶ 87.

Similar to his allegations regarding his own work experience, Plaintiff alleges that Defendants' reading of *The Whitfield Files* is erroneous and speculates that they did not consider allegedly mitigating materials in his application materials, including the fact that he owns his

own business.  *See id.*  ¶¶ 114—15, 178.  Here, again, such speculative allegations are not sufficient to state a claim upon which relief may be granted.  *See Jackson*, 709 F. Supp. 2d at 224.

Plaintiff also alleges that Defendants' legitimate non-discriminatory reasons for not hiring him are pretext for discrimination as evidenced by inadmissible hearsay statements made in unrelated press conferences that Defendants have instituted a new hiring policy that precludes individuals with prior murder convictions from being hired as a YDS.  *See* FAC ¶¶ 160, 175—81. To this end, Plaintiff cites several inadmissible hearsay public statements made by Defendant Commissioner David Hansell regarding an incident with former ACS employee Jacques Edwards. *See id.*  Mr. Edwards, who served 28 years in prison for a murder conviction, was accused of assaulting a six-year-old boy in his care at an ACS facility, and his case was covered heavily by the media.  *See id.* ¶¶ 5—6, 177.

Plaintiff's theory is highly speculative and unsupported by the very inadmissible hearsay sources he cites.  Plaintiff also fails to plead that he is similarly situated to Jacques Edwards. Plaintiff's allegation that he and Jacques Edwards are both members of the same protected class on the basis of their conviction status is not sufficient to plead that he is similarly situated to Mr. Edwards in all material respects.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this motion and dismiss the First Amended Complaint in its entirety together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
              December 4, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-109(b)
New York, New York 10007
(212) 356-2441
awanslow@law.nyc.gov

By:    */s/ Angela M. Wanslow*
       Angela M. Wanslow
       Assistant Corporation Counsel

Angela M. Wanslow,
Bruce Rosenbaum,
  Of Counsel.