UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN DAVID WHITFIELD,

                     Plaintiff,

           -v-

CITY OF NEW YORK et al.,

                 Defendants.

------------------------------------------------------------------------X

20-CV-4674 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

    Plaintiff John Whitfield, proceeding without counsel, brings claims against the City of New York (the "City") and employees of the City's Administration for Children's Services ("ACS") arising from ACS's rejection of his application to be a Youth Development Specialist.[1] Whitfield previously served a lengthy prison term for murder and, while incarcerated, authored an award-winning memoir declaring his innocence. Whitfield claims here, as he did in a previous action brought in state court pursuant to Article 78 of the New York Civil Practice Law & Rules, N.Y. C.P.L.R. §§ 7801 *et seq*., that Defendants violated his First Amendment rights and discriminated against him. *See* ECF No. 74 ("Compl."), ¶¶ 67-234. In an earlier Opinion and Order, the Court dismissed Whitfield's claims on the basis of *res judicata* or claim preclusion — concluding that they were barred by the state court's rejection of his claims in the Article 78 proceeding. *See Whitfield v. City of New York*, No. 20-CV-4674 (JMF), 2021 WL 1700592 (S.D.N.Y. Apr. 29, 2021) (ECF No. 44); *see also Whitfield v. City of New York*, No. 20-CV-4674

---

[1]     The individual Defendants are David A. Hansell, Joseph Cardieri, Kathleen Skowyra, Jennifer Fiellman, and Phoebe Rosen.

(JMF), 2022 WL 563548 (S.D.N.Y. Feb. 24, 2022) (ECF No. 61) (denying a motion for reconsideration).  A divided Court of Appeals vacated that decision and remanded for further proceedings.  *See Whitfield v. City of New York*, 96 F.4th 504 (2d Cir. 2024).

On remand, Defendants move again, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss.  *See* ECF No. 75.  Specifically, they contend that Whitfield's claims are collaterally estopped by the state court's ruling — an issue that the Court of Appeals explicitly did not reach, *see* 96 F.4th at 523 n.16 — and that his claims fail as a matter of law.  Whitfield, for his part, moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment.  *See* ECF No. 83.  The Court denies Whitfield's motion as premature.  As for Defendants' motion, although the issue of collateral estoppel is a close one given seemingly inconsistent decisions by the Second Circuit, the Court concludes that collateral estoppel does not apply due to the differences between this proceeding and the Article 78 proceeding.  On the merits, the Court concludes some, but not all of Whitfield's claims — namely, his First Amendment retaliation claim against the City and his claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") — survive Defendants' motion to dismiss.  Accordingly, and for the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts, drawn from the operative Second Amended Complaint (the "Complaint"), are assumed to be true for purposes of this motion.  *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Whitfield, an African-American man, was convicted of murder in the second degree and served a lengthy sentence before he was release in November 2012.  *See* Compl. ¶¶ 19-21.  Throughout his incarceration, Whitfield maintained his innocence.  *Id.* ¶ 19.  In 2003, he

authored an award-winning memoir titled *The Whitfield Files*, which details his claims of innocence and, more generally, his experiences with the criminal justice system. *Id.* Whitfield also served as a Youth Assistant Program facilitator from 2008 to 2012 while he was incarcerated at Woodbourne Correctional Facility. *Id.* ¶ 20. In that role, Whitfield worked with youths brought into the facility by prison, school, and community administrators. *Id.*

Whitfield continued working with youths after his release from prison. In 2013, he was hired as a youth counselor by a nonprofit organization, and he worked with hundreds of students, including gang-affiliated and gang-adjacent students, in several junior high and high schools across New York City. *Id.* ¶ 22. He also worked in community centers in Brooklyn and the Bronx and, from 2016 to 2018, worked in Rikers Island's youth facilities, teaching "life skills" to detained youths between the ages of fifteen and nineteen. *Id.*

In May 2018, six years after his release from prison, Whitfield applied for a job as a Youth Development Specialist ("YDS") at ACS to work in youth detention centers. *Id.* ¶¶ 23-24. Whitfield "submit[ed]" *The Whitfield Files* as part of his application package — although what that entailed is somewhat unclear from the Complaint. *See, e.g.*, *id.* ¶¶ 81, 111. After completing a screening process and interview, he was informed in June 2018 that he had been "selected" as a YDS. *Id.* ¶¶ 25-26. Whitfield then received and completed employment documents, attended a related medical appointment, passed drug and alcohol tests, and completed an employment verification process. *Id.* ¶¶ 28-29. In July 2018, however, an ACS employee informed Whitfield that, before he could begin working for ACS, his employment would need to be approved by three entities: the New York State Justice Center for the Protection of People with Special Needs (the "Justice Center"), the New York City Department of Citywide Administrative Services ("DCAS"), and ACS itself. *Id.* ¶ 30. The ACS employee

also stated that Whitfield had already been "deemed fit to work at ACS" and that "the only issue at this point was [Whitfield's] criminal background." *Id.*

While final approval of Whitfield's employment was pending, ACS became publicly embroiled in controversy when, in August 2018, an employee, Jacques Edwards, was filmed slamming a six-year-old child against a file cabinet. *Id.* ¶ 33. The incident was widely publicized by news outlets, which focused on the fact that Edwards had been employed by ACS to work with children — despite having previously served twenty-eight years in prison for murder. *Id.* ¶¶ 33-37. In response to press inquiries, ACS Commissioner Hansell (a Defendant here) stated that ACS was "reviewing the circumstances" that led to Edwards's hiring, that ACS had since put "hiring protocols in place that are much stricter in regards to hiring and vetting staff for positions involving working with children," and that he did not "believe [Edwards] would have been hired today." *Id.* ¶ 35. In a separate statement to the press, a spokesperson for the Mayor's office stated that: "It's awful and unacceptable and we've *ordered* ACS to figure out how it could have happened so *it never happens again*." *Id.* ¶ 37.

A month later, in September 2018, ACS decided not to approve Whitfield's employment as a YDS. *See id.* ¶ 39. Specifically, a Personnel Review Panel consisting of Defendants Cardieri, Skowyra, Fiellman, and Rosen briefed Commissioner Hansell on its recommendation that Whitfield not be hired, and Hansell agreed. *Id.* Whitfield, however, was not formally notified of the decision until nearly a year later, in June 2019, when Defendants answered a complaint that he had filed with the New York State Division of Human Rights ("NYSDHR"). *Id.* ¶¶ 40-43. In their answer to Whitfield's NYSDHR complaint, Defendants "revealed . . . for the first time" that ACS refused to hire him based on his "strongly held views about the criminal justice system" expressed in *The Whitfield Files* and "his lack of experience performing daily one-on-one direct care with youth." *Id.* ¶¶ 42-43. Whitfield further alleges statements by

Defendants that described his memoir as "anti-law enforcement," "anti-prosecutorial," and "anti-establishment," and that expressed their belief that Whitfield's presence as a YDS would cause "violence," "dissension," and "instability." *Id.* ¶ 43. He alleges that, in support of their hiring determination, Defendants highlighted two excerpts from the memoir. One passage described "police and prosecutors" as "notorious for fabricating evidence, encouraging perjured testimony, and concealing and destroying exculpatory evidence" as part of a "prison industrial complex" where "racism is so deeply entrenched in the social fabric" and "with money being the driving force." *Id.* ¶ 86. The other states that police and prosecutors commit "crimes without batting an eye, and when it is done to minorities, they do it without losing a second's worth of sleep"— and that this takes place "[i]n every city, in most courtrooms across the country." *Id.*

## PROCEDURAL HISTORY

Proceeding without counsel, Whitfield commenced Article 78 proceedings in New York state court in September 2019. Compl. ¶ 48. In his petition, he alleged that ACS's hiring determination was arbitrary and capricious, discriminatory, and violative of his First Amendment rights. *Id.* In June 2020, while the Article 78 proceeding was pending, Whitfield filed his complaint here, raising substantially similar claims. *See* ECF No. 1. On August 26, 2020, the New York State Supreme Court dismissed Whitfield's Article 78 petition, *see* Compl. ¶ 63, concluding that ACS's hiring determination was "rational, based upon appropriate factors, and not discriminatory," *Whitfield v. City of N.Y. Admin. for Children's Servs.*, 2020 WL 5040369, at *3 (N.Y. Sup. Ct. Aug. 26, 2020). The state court "reject[ed] the petitioner's contention that ACS violated his First Amendment rights when it considered his published writings as a negative factor in evaluating his employment application." *Id.* at *4. The court also concluded that "there is no basis for the petitioner's claim that ACS discriminated against him on the basis of his prior

5

criminal record or that his qualifications necessarily were superior to any of the successful applicants." *Id.*

In reaching these conclusions, the court noted that it "may not conduct a de novo review of ACS's hiring determinations" because "the petitioner elected to challenge ACS's hiring decision via [a] CPLR article 78 proceeding." *Id.* at \*5. Instead, the court observed that it was "constrained to apply the 'arbitrary and capricious' standard of judicial review, which is far more deferential to the factual findings of the agency decision maker than is the 'preponderance of the evidence' standard." *Id.* (internal citation omitted); *see id.* ("[T]he court may not substitute its judgment for that of ACS as it relates to its hiring decisions, and is constrained to determine only whether ACS's determination in this regard was completely irrational."). Applying that deferential standard, the court denied Whitfield's petition and dismissed the proceeding. *Id.* The Appellate Division subsequently affirmed the Supreme Court's judgment, agreeing that ACS's hiring decision "was not arbitrary and capricious or affected by an error of law." *Whitfield v. City of N.Y. Admin. for Children's Servs.*, 158 N.Y.S.3d 63, 64 (1st Dep't 2021).

In December 2020, Defendants moved to dismiss Whitfield's claims in this case on multiple grounds: that they are precluded by *res judicata* (or, in the alternative, collateral estoppel); that the individual Defendants are entitled to qualified immunity; and that Whitfield otherwise fails to state a plausible claim. *See* ECF Nos. 33, 35. This Court granted the motion to dismiss on the basis of *res judicata* alone, *see* ECF No. 44, and subsequently denied reconsideration, *see* ECF No. 61. On appeal, a divided panel of the Second Circuit vacated the dismissal and remanded for further proceedings, concluding that Whitfield's claims are not barred by *res judicata*. *See Whitfield*, 96 F.4th at 535. As relevant here, the Circuit emphasized that "the State Supreme Court [had taken] pains to clarify that its analysis of Whitfield's claims was 'constrained' by the standard of review and summary procedures applicable in Article 78

proceedings.  Critically, the court stressed that, had Whitfield pursued his claims in a plenary action instead of in an Article 78 proceeding, his claims would have been decided under the preponderance of the evidence standard, which is less deferential to the agency than the arbitrary and capricious standard of [Article 78]."  *Id.* at 531 (citations omitted).

The Second Circuit noted that, on remand, "Defendants may be permitted to move to dismiss again based on the alternative grounds first raised in their December 2020 motion and as yet not addressed by either the district court or this Court."  *Id.*  Relatedly, the Court explicitly noted that it was not addressing issue preclusion, as this Court had not addressed it in ruling on Defendant's motion to dismiss and Defendants did not raise it on appeal.  *See id.* at 523 n.16.  On remand, Whitfield filed the operative Second Amended Complaint, which, liberally construed, asserts claims for (1) First Amendment retaliation; (2) discrimination based on race and criminal conviction status under the Fourteenth Amendment; and (3) discrimination based on criminal conviction status under the NYSHRL, N.Y. Exec. Law § 290 *et seq.*, and the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, and, at least arguably, the New York State Correction Law, N.Y. Correc. Law § 752.  Consistent with the directions of the Second Circuit, Defendants move to dismiss by reasserting the grounds for dismissal that the Court did not address in its rulings on the first motion to dismiss.  *See* ECF No. 75.

## WHITFIELD'S MOTION FOR SUMMARY JUDGMENT

The Court begins with Whitfield's motion for partial summary judgment, if only because it requires little discussion.[2]  In general, "summary judgment should only be granted if *after*

---

[2]    The Court initially denied Whitfield leave to file the motion "without prejudice to renewal if Defendants' renewed motion to dismiss is denied in any part," ECF No. 69, but later blessed Whitfield's motion (albeit after he filed it despite the Court's denial) "[i]n light of Plaintiff's pro se status and the age of this case," ECF No. 84.

*discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Hellstrom v. U.S. Dep't of Veteran Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) (cleaned up). It is "[o]nly in the rarest of cases" that summary judgment may "be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Id.* (citing cases). This is not one of the "rarest cases" in which the non-moving party, Defendants, should be denied "the opportunity to discover information that is essential to [their] opposition to the motion for summary judgment." *Id.* (cleaned up). If there are not disputes of material fact that would require denial of summary judgment, there are certainly issues that call for further factual development, including but not limited to the nature of Whitfield's prior counseling experience, whether ACS implemented a stricter hiring protocol following the Edwards incident, and — if it did — what that policy was. Accordingly, Whitfield's motion for partial summary judgment must be and is DENIED as premature.

## DEFENDANTS' MOTION TO DISMISS

In their motion, Defendants contend first that Whitfield's claims all fail due to collateral estoppel or issue preclusion. *See* ECF No. 77 ("Defs.' Mem."), at 5-8. In the alternative, they contend that Whitfield's claims each fail as a matter of law. *See id.* at 8-24. The Court will address each argument in turn.

### A. Legal Standards

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). Moreover, the Court is obliged to construe liberally *pro se* pleadings, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d

471, 474 (2d Cir. 2006) (internal quotation marks omitted).  Still, in order to survive a Rule 12(b)(6) motion against a defendant, a plaintiff must plead sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  A complaint that offers only "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 545.  Further, if the plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Id.* at 570.  When, as here, a plaintiff brings claims of employment discrimination or retaliation, however, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination [or retaliation].  They need only give plausible support to a minimal inference of discriminatory [or retaliatory] motivation."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

## B.  Issue Preclusion

The Court begins with Defendants' argument that Whitfield's claims are barred by the doctrine of collateral estoppel or issue preclusion.  "Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 284 (2d Cir. 2012) (internal quotation marks omitted).  It differs from *res judicata* or claim preclusion, the doctrine on which the Court relied in its decision on Defendants' first motion to dismiss, in that issue preclusion "bars successive litigation of an

issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted).  Under New York law, which governs the analysis, *see, e.g.*, *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005), relitigation of an issue is barred when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (internal quotation marks omitted).  "Dismissal under Rule 12(b)(6) is appropriate when a defendant raises collateral estoppel, or issue preclusion, as an affirmative defense and it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of" — which, here, includes the state court decisions — "that the plaintiff's claims are barred as a matter of law." *Wachtmeister v. Swiecz*, 59 Fed. App'x 428, 429 (2d Cir. 2003) (summary order).

Whether issue preclusion applies here is a difficult question, in part because the Second Circuit has not spoken in a single voice when it comes to prior rulings in proceedings like those here.  On the one hand, the Second Circuit has accorded issue preclusive effect to state court determinations in Article 78 proceedings on several occasions.  *See e.g.*, *LaFleur v. Whitman*, 300 F.3d 256, 272 (2d Cir. 2002) ("A judgment pursuant to Article 78 may preclude relitigation of issues already decided in that earlier judgment."); *Powell* v. *Ward*, 643 F.2d 924, 934 (2d Cir. 1981); *Ellentuck v. Klein*, 570 F.2d 414, 422-25 (2d Cir. 1978); *cf. Ornstein v. Regan*, 574 F.2d 115, 117 (2d Cir. 1978) (observing that "our decisions have clearly established that where a constitutional issue has been actually raised in the state court, the litigant has made his choice and may not relitigate that issue in a federal court in a Section 1983 action").  What is more, in

*Constantine v. Teachers Coll.*, 448 Fed. App'x 92 (2d Cir. 2011) (summary order), the Second

Circuit — by unpublished summary order — seemingly rejected the argument that a plaintiff

"should not be precluded by the decision in the Article 78 proceeding because the standard of

proof that she faced in that action was higher than what she would need to satisfy to prove her

claim in federal court," *id.* at 94, an argument that Whitfield asserts here, *see* ECF No. 82 ("Pl.'s

Opp'n"), at 7-8.  Indeed, the *Constantine* Court noted that "numerous courts in this Circuit" had

given issue preclusive effect to Article 78 determinations and quoted the statement in *Kosakow v.

New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 732 (2d Cir. 2001), that "a shift in the

burden of proof is not dispositive as to whether collateral estoppel can be applied," 448 F. App'x

at 94.  Relatedly, the Second Circuit has confirmed that Article 78 proceedings generally offer a

full and fair opportunity to litigate claims. *See, e.g.*, *Moccio v. N.Y. State Off. of Court Admin.*,

95 F.3d 195, 202 (2d Cir. 1996).

On the other hand, the Second Circuit has held that "a difference in the burdens of proof

in two proceedings *can* make the application of collateral estoppel improper." *Cobb v. Pozzi*,

363 F.3d 89, 114 (2d Cir. 2004) (emphasis added).  And for good reason: "A party's success in

an earlier proceeding where it faced a lower burden of proof does not mean that, against a higher

burden of proof in a subsequent proceeding, that party would achieve the same result." *Id.; see,

e.g.*, *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 235 (1972)

(holding that "the difference in the burden of proof in criminal and civil cases precludes

application of the doctrine of collateral estoppel" because "an adjudication that the proof was not

sufficient to overcome all reasonable doubt . . . does not constitute an adjudication on the

preponderance-of-the-evidence burden applicable in civil proceedings").  Applying that

principle, the Second Circuit has, on at least one prior occasion, rejected application of issue

preclusion to bar a Section 1983 suit following resolution of an Article 78 proceeding because

"[d]eciding the federal claims in [the plaintiff's] favor would not necessarily contradict the Article 78 court's determination that [the defendant's] decision was not 'arbitrary and capricious.'" *DiBlasio v. Novello*, 344 F.3d 292, 296 (2d Cir. 2003).

Navigating this landscape, the Court concludes that issue preclusion does not apply here.[3] Yes, the issues Whitfield raises in this case — i.e., First Amendment retaliation and employment discrimination — were similar, if not identical to, the issues he raised in the Article 78 proceedings. But taken together, the Second Circuit's cases teach that issue preclusion applies despite different burdens of proof only "where it is evident that burden of proof *played little or no role*" in the prior case. *Kosakow*, 274 F.3d at 732 (emphasis added). And here, some loose language in the state court's decision notwithstanding, the Court cannot say that the burden of proof in the Article 78 proceeding "played little or no role" in the rejection of Whitfield's petition. As the Second Circuit emphasized in its prior ruling on appeal, "the State Supreme Court took pains to clarify that its analysis of Whitfield's claims was 'constrained' by the standard of review . . . applicable in Article 78 proceedings." *Whitfield*, 96 F.4th at 531. Indeed, "the court stressed that, had Whitfield pursued his claims in a plenary action instead of in an Article 78 proceeding, his claims would have been decided under the preponderance of the evidence standard, which is less deferential to the agency than the arbitrary and capricious

---

[3]     Whitfield argues that issue preclusion does not apply because he "raises several significant federal claims and seeks substantial compensatory and punitive damages that were not available in the prior proceeding." Pl.'s Opp'n 14. But this argument confuses issue preclusion with claim preclusion. As noted, in contrast to claim preclusion, issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of *a different claim*." *Taylor*, 553 U.S. at 892 (internal quotation marks omitted) (emphasis added). Thus, the fact that a plaintiff such as Whitfield "was unable to receive damages in his state . . . petition may relieve him of res judicata application, but it does not necessarily change the fact that a court has already decided the issues he now raises." *Burgos*, 14 F.3d at 792.

standard of CPLR 7803(3)).” *Id*.; *see also id.* at 532 (“[W]e do not understand the state court’s
First Amendment discussion to reflect a substantive adjudication of any freestanding
constitutional claim.  Rather, the court’s repeated references to the Article 78 standard of review
demonstrate that it invoked First Amendment principles in order to analyze whether ACS’s
decision was arbitrary and capricious or ‘affected by an error of law’ under CPLR 7803(3)”).

In short, “although [Whitfield’s] Article 78 claim[s] [were] based on many of the same
facts underlying his federal constitutional claims, the claims are not comparable.  Deciding the
federal claims in [Whitfield’s] favor would not necessarily contradict the Article 78 court’s
determination that [ACS’s] decision was not ‘arbitrary and capricious.’” *DiBlasio*, 344 F.3d at
296.  The Court therefore concludes that issue preclusion does not apply.[4]

## C.  First Amendment Retaliation

Having concluded that issue preclusion does not apply, the Court will turn to Defendants’
claim-specific arguments, beginning with Whitfield’s First Amendment retaliation claim.
Whitfield alleges that Defendants’ refusal to hire him based on views expressed in his memoir,
*The Whitfield Files*, violated his First Amendment right to free speech.  *See* Compl. ¶¶ 67-152.

Significantly, the parties did not find “any cases involving a First Amendment retaliation
claim brought, as in this case, by a non-employee candidate for public employment,” Defs.’
Mem. 8; *see* Pl.’s Opp’n 17 n.6, and disagree about the appropriate legal standard to apply.
Citing decisions from the D.C., Tenth, and Eleventh Circuits, Defendants contend that the Court

---

[4]      Defendants’ sole rejoinder — that, “regardless of the standard utilized by the state court
in deciding to deny Plaintiff’s Article 78 petition, the state court justice’s decision provided
thorough and balanced reasoning in reaching the conclusions stated therein,” ECF No. 87
(“Defs.’ Reply”), at 13 — misses the point.  The soundness of the state court’s reasoning is not at
issue.  Instead, the question turns on whether the different standard of proof played a role in the
state court’s rejection of Whitfield’s claims in the Article 78 proceedings.  It plainly did.

should apply the test that applies to speech on a matter of public concern by a public employee. *See* Defs.' Mem. 8 & n.4 (citing *Worrell v. Henry*, 219 F.3d 1197, 1207 (10th Cir. 2000); *Shahar v. Bowers*, 114 F.3d 1097, 1102-03 (11th Cir. 1997); *Hubbard v. EPA*, 949 F.2d 453, 460 (D.C. Cir. 1992), *abrogated on other grounds by Hubbard v. Adm'r, EPA*, 982 F.2d 531 (1992) (en banc)). That test — known as the *Pickering* test because it was adopted in *Pickering v. Board of Education*, 391 U.S. 563 (1968) — requires the Court to "seek a balance between the interests of the employee, as a citizen, in commenting upon matter of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 142 (1983) (cleaned up). By contrast, Whitfield contends that his claim "should be viewed under the 'private citizens alleging retaliation for their criticism of public officials standard'" because his "protected speech was made as a private citizen, it was made 15 years prior to applying for the YDS job, it had nothing to do with the Defendants, it was unrelated to the Defendants' operations, it solely involved 'criticism' of police and prosecutors who are 'public officials' completely unrelated to ACS, and it was clearly innocuous." Pl.'s Opp'n 17 n.6 (cleaned up).

The Court need not and does not resolve this dispute here because Whitfield's claim survives even under the more Defendants-friendly *Pickering* test. Put simply, "at the motion-to-dismiss stage and without the benefit of discovery," the Court cannot conclude as a matter of law that Defendants refused to hire Whitfield "because of the disruption it could cause in the workplace, rather than because of the content of the speech." *Festa v. Westchester Med. Ctr. Health Network*, 380 F. Supp. 3d 308, 321 (S.D.N.Y. 2019); *see also Squicciarini v. Vill. of Amityville*, No. 17-CV-6768, 2019 WL 1232093, at *9 (E.D.N.Y. Mar. 15, 2019); *Sugar v. Greenburgh Eleven Union Free Sch. Dist.*, No. 18-CV-67 (VB), 2018 WL 6830865, at *7 (S.D.N.Y. Dec. 28, 2018) ("*Pickering*'s balancing test demands a fact-sensitive inquiry generally

unsuited for resolution on a motion to dismiss.  Here, on this undeveloped record, the Court cannot readily discern every interest at play in this case, or how those interests weigh against one another." (cleaned up)).  In other words, given Whitfield's allegations, and the reasonable inferences to be drawn from them, the Court cannot say as a matter of law that the balance between the interests of Whitfield "in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs" weighs in Defendants' favor.  *Connick*, 461 U.S. at 142.

Defendants also argue, albeit only in passing, that they "would not have hired Plaintiff even in the absence of his speech because of his lack of relevant work experience."  Defs.' Mem. 9.  This causation argument fares no better.  As discussed, to survive a motion to dismiss, the facts alleged in a complaint "need only give plausible support to a minimal inference" of retaliatory motivation.  *Littlejohn*, 795 F.3d at 311.  What is more, "[c]ausation generally is a question for the finder of fact" and, at this stage, "the role of the Court is to determine whether [Plaintiff] has alleged facts that could support a reasonable finding of a causal connection between his protected speech and the adverse employment action."  *DePace v. Flaherty*, 183 F. Supp. 2d 633, 638 (S.D.N.Y. 2002).  Here, Whitfield alleges more than sufficient facts to infer a causal connection.  Among other things, the Complaint alleges that Defendants explicitly cited *The Whitfield Files* as "the primary focus" in ACS's decision not to approve Whitfield's employment.  *See* Compl. ¶¶ 42-43, 125.  To be sure, Defendants' other stated rationale for their hiring determination was Whitfield's "lack of experience performing daily one-on-one direct care with youth," *id.* ¶ 43, but the Complaint's allegations as to Whitfield's extensive experience in youth counseling, *see id.* ¶ 126-136, cast some doubt on this rationale.

Accordingly, the Court finds that Whitfield states a claim for First Amendment retaliation. That is enough for Whitfield's claim to survive as to the City.[5] But his claim as to the individual Defendants — that is, Hansell, Cardieri, Skowyra, Fiellman, and Rosen — must be and is dismissed on the basis of Defendants' alternative argument for qualified immunity. *See* Defs.' Mem. 19-21. Under the doctrine of qualified immunity, "a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). Put differently, the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[W]hatever other remedies may be available for illegal conduct, money damages from a government agent are permitted only where any reasonable officer would clearly understand that his actions were unlawful." *Tanvir v. Tanzin*, 120 F.4th 1049, 1060 (2d Cir. Oct. 29, 2024). Qualified immunity thus shields the individual Defendants from money damages unless Whitfield can show "that the right was 'clearly established' at the time of the challenged conduct," *id.*, which, in this case, was September 2018.

Whitfield cannot make such a showing. His only response to Defendants' qualified immunity argument — that "the First Amendment right to freedom of speech is very well established," Pl.'s Opp'n 39 — is plainly insufficient under longstanding Second Circuit

---

[5] As to the City, Defendants include in their opening memorandum of law only the arguments for dismissal of the First Amendment retaliation claim rejected above. *See* Defs.' Mem. 13-14. In their reply, Defendants raise several new objections to that claim. *See* Defs.' Reply 20-25. The Court need not and does not consider these objections here, however, because "[i]ssues raised for the first time in a reply brief are generally deemed waived." *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

precedent, as it "define[s] the right in question far too broadly." *Lewis v. Cowen*, 165 F.3d 154, 166 (2d Cir. 1999). Indeed, "[t]he relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech," and that "requires that a court define the constitutional right with some specificity." *Id.* at 166-67; *see also Giacalone v. Abrams*, 850 F.2d 79, 85 (2d Cir. 1988) (same). Thus, the Court agrees that Defendants' definition of the issue: "whether [the individual] Defendants should have known that making an adverse employment determination on the basis of speech submitted with Plaintiff's employment application materials would violate the First Amendment." Defs.' Mem. 20-21. Defined this way, Whitfield does not identify — nor has the Court found — any precedent clearly establishing such a First Amendment right, let alone as of September 2018. And, as noted, the parties could not, even today, find any binding precedent addressing a First Amendment retaliation claim like Whitfield's — involving a non-employee candidate for public employment. Thus, Whitfield does not and cannot show that the relevant right was "clearly established" at the time of the individual Defendants' conduct.[6]

For these reasons, Defendants' motion to dismiss Whitfield's First Amendment retaliation claim survives as to the City, but is dismissed as to the individual Defendants.

---

[6] That conclusion is all the more compelled to the extent that the Pickering test applies. Mindful of the "wide degree of deference" owed to an employer's judgments under that test, *Locurto v. Giuliani*, 447 F.3d 159, 182 (2d Cir. 2006), the Court cannot say, "[e]ven accepting [Whitfield's] account of his [rejection], . . . that the *Pickering* balance did not tip in his favor so clearly that [Defendants] can properly be said to have forfeited their qualified immunity." *Giacalone v. Abrams*, 850 F.2d at 86.

**D. Fourteenth Amendment**

Next, Whitfield brings claims for racial discrimination and discrimination based on his prior murder conviction in violation of the Equal Protection Clause of the Fourteenth Amendment. With respect to the former, it is well established that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). To prevail on a race discrimination claim, a plaintiff need not prove that the "challenged action rested *solely* on racially discriminatory purposes," *id.* (emphasis added), but he must plead that the defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group," *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010). Whitfield's claim of racial discrimination fails because it rests entirely on conclusory allegations. Indeed, the only allegations related to racial discrimination in his sixty-eight-page Complaint are his assertions that Defendants' hiring determination was "motivated by an intention to discriminate based on [his] race" and "due to the Defendants' racially motivated jealousy and envy of [Whitfield's] numerous extraordinary accomplishments." *See, e.g.*, Compl. ¶¶ 173, 182. These statements, however, are "conclusory" allegations that amount to "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim" and, as such, "are not entitled to the assumption of truth." *Hayden*, 594 F.3d at 161-62. Accordingly, Whitfield's claim of racial discrimination fails as a matter of law.

Whitfield's Fourteenth Amendment claim based on his "criminal conviction for murder," Compl. ¶ 154, fares no better. For starters, persons convicted of murder are not a protected class under the Fourteenth Amendment. *See, e.g.*, *Baker v. Cuomo*, 58 F.3d 814, 820 (2d Cir. 1995), *vacated on other grounds by Baker v. Pataki*, 85 F.3d 919 (2d Cir. 1996) (en banc); *Cusamano v. Alexander*, 691 F. Supp. 2d 312, 321 (N.D.N.Y. 2009). Where a plaintiff does not allege an

equal protection violation premised on his membership in a protected class, he may still proceed under a "class-of-one" theory, "under which a single individual can claim a violation of her Equal Protection rights based on arbitrary disparate treatment." *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2d Cir. 2019); *see also* Compl. ¶ 162 (asserting, "in the alternative, [that] Plaintiff is also a 'class of one'"). The Supreme Court has held, however, that "the class-of-one theory of equal protection does not apply in the public employment context" because "treating seemingly similarly situated individuals differently in the employment context is par for the course." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 598, 604 (2008). Whitfield's class-of-one claim falls squarely within that exception. He thus fails to state a plausible Fourteenth Amendment claim based his criminal conviction for murder.

Accordingly, the Court grants Defendants' motion to dismiss Whitfield's Fourteenth Amendment equal protection claims as to all Defendants. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 30 (2d Cir. 2018) ("Because [petitioner] has not plausibly alleged an underlying constitutional violation, his *Monell* claims against the municipal defendants necessarily fail.").

## E.  State and Local Law Claims

That leaves only Whitfield's claims for discrimination based on his prior criminal conviction in violation of state and local law, namely Section 296(15) of the NYSHRL, Section 8-107(10) of the NYCHRL, and Article 23-A (or Section 752) of the New York State Correction Law. *See* Compl. ¶¶ 190-208. To the extent Whitfield brings a standalone claim under the last of these laws, it requires little discussion. As Judge Liman cogently explained in a recent decision, Article 23-A of the New York State Correction Law "cannot be construed to contain an implied private right of action." *Robinson v. MSG Ent. Grp., LLC*, No. 23-CV-9366 (LJL), 2024 WL 3938361, at *15 (S.D.N.Y. Aug. 26, 2024); *see also Millien v. Madison Square Garden Co.*, No. 17-CV-4000 (AJN), 2020 WL 4572678, at *2 (S.D.N.Y. Aug. 7, 2020) ("While Article 23-A

does not appear to have a private right of action, the NYCHRL effectively creates one for those who apply to positions in New York City.").  Accordingly, Defendants' motion to dismiss must be and is granted as to any independent claim raised under Article 23-A of the Correction Law.

By contrast, the Court concludes that Whitfield states plausible claims under the NYSHRL and NYCHRL.  NYSHRL Section 296(15) makes it unlawful to deny employment to an individual "by reason of his or her having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of article twenty-three-A of the [New York] correction law."  N.Y. Exec. Law § 296(15).  Thus, "liability under section 296(15) arises only upon a violation of article 23-A."  *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 182 (2017).  Article 23-A of the New York Correction Law, in turn, instructs that "[n]o application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses," unless one of two exceptions applies: "(1) there is a direct relationship between one or more of the previous criminal offenses and the specific . . . employment sought or held by the individual; or (2) . . . the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public."  N.Y. Correct. Law § 752.  To determine whether either exception applies, the employer must consider eight factors set forth in the Correction Law.  *See id.* § 753.  An employer violates Article 23-A when "a person is denied employment by [that] employer because of a prior criminal conviction *and* the employer did not follow the procedure to determine whether an exception applies."  *Griffin*, 29 N.Y.3d at 183.

As a threshold matter, Defendants assert in passing that Whitfield fails to plausibly allege an Article 23-A violation because he "concedes that Defendants satisfied the procedural requirements of Article 23-A by DCAS's performance of the 8-factor analysis required by the

statute." Defs.' Mem. 22.  This argument is without merit.  Whitfield's Complaint alleges only

that the Justice Center and DCAS — the two agencies that approved his final employment

"despite his criminal convictions" — "performed the eight-factor statutory analysis in

accordance with the Correction Law, Article 23-A."  Compl. ¶ 4.  That allegation makes little

sense because the "eight-factor statutory analysis" is necessary only when an employer *denies*

employment based on a prior criminal conviction, which the Justice Center and DCAS did not

do.  But in any event, the allegation has no bearing on whether *ACS* unlawfully denied Whitfield

employment based on his criminal history.  Indeed, as discussed below, Defendants' primary

ground for dismissal of Whitfield's state and local law claims is their insistence that ACS's

hiring determination was unrelated to Whitfield's criminal background.  The exceptions

enumerated in Article 23-A are thus entirely beside the point.[7]

    Instead, the central question is whether Whitfield adequately alleges a causal connection

between ACS's denial of employment and his prior criminal conviction.  Discrimination claims

brought under the NYSHRL are evaluated under the burden-shifting framework established by

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Franklin v. Whole Foods Mkt.*

*Grp., Inc.*, No. 20-CV-4935 (VEC), 2022 WL 256460, at *4 (S.D.N.Y. Jan. 26, 2022) ("Courts

apply this framework to NYSHRL criminal history discrimination claims even though criminal

history is not a protected category under Title VII.").  Under that framework, a plaintiff must

first make out a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If the

plaintiff meets that "de minimis" initial burden, *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d

---

[7]    In a single sentence, Defendants argue that Whitfield's NYSHRL claim should be
dismissed at to the individual Defendants because they do not qualify as "employers."  *See*
Defs.' Mem. 21-22.  "The Court need not, and will not, consider arguments raised in such a
'perfunctory manner.'"  *Frommer v. MoneyLion Techs. Inc.*, No. 23-CV-6339 (JMF), 2024 WL
2158589, at *6 (S.D.N.Y. May 14, 2024) (citing cases).

Cir.1998), he is entitled to a temporary presumption of discrimination, and the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse action, *McDonnell Douglas*, 411 U.S. at 802.  If the defendant does so, the temporary presumption "drops from the picture," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), and the burden shifts back to the plaintiff to show "pretext."  *Id.*  As noted, however, to survive a motion to dismiss, the facts alleged in the complaint "need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311.

In this case, the facts in the Complaint do so.  Defendants object primarily that Whitfield does not allege sufficient facts "that Defendants did not hire him 'on the basis of' his underlying murder conviction."  Defs.' Mem. 22.  But that is not accurate.  For starters, the Complaint alleges that Whitfield was required to obtain final approval from three state and local agencies (including ACS) — after having already been "selected" as a YDS — because of his "criminal background."  Compl. ¶¶ 25-26, 30.  In other words, it suggests that if Whitfield did not have a criminal background, he would not have required final approval from ACS.  What is more, the Complaint also alleges that ACS rejected Whitfield's employment application just one month after the agency faced public criticism for employing someone with a prior murder conviction (Edwards) to work with children — criticism that prompted ACS Commissioner Hansell to state publicly that ACS had instituted stricter hiring requirements that would prevent Edwards from being hired today.  *Id.* ¶¶ 33-37.  Although the allegations surrounding these events do not provide direct evidence of discrimination, courts frequently cite close temporal proximity to "indirectly establish a causal connection to support a discrimination or retaliation claim."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).  Just so here.

Neither of Defendants' other objections is persuasive either.  Defendants argue first that Whitfield's allegations about Hansell's statements to the press constitute "inadmissible hearsay

statements," Defs.' Mem. 24. But whether or not the Complaint includes hearsay statements is irrelevant because, at the motion to dismiss stage, the Court is required to accept all factual statements as true in evaluating the legal sufficiency of the complaint. *See Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 378 (S.D.N.Y. 2006) ("[I]t is inappropriate at [the motion to dismiss] stage to consider whether or not the factual support underlying [the plaintiff's] claim . . . constitutes hearsay."). Defendants' second objection is that Whitfield was not hired due to lack of relevant work experience and *The Whitfield Files*. *See* Defs.' Mem. 22-24. But here again, Defendants ignore the present posture. Defendants may ultimately be able to articulate nondiscriminatory reasons for refusing to hire Whitfield, but "[t]he second and third steps of the *McDonnell Douglas* framework are not considered on a motion to dismiss and are more appropriately considered on a motion for summary judgment or at trial." *Franklin*, 2022 WL 256460, at *4. Accordingly, the Court finds that Whitfield's NYSHRL claim survives. It follows that his claim under Section 8-107(10)(a) of the NYCHRL, which is similar to, but "but contains, as to some elements, more liberal pleading and proof standards" than Section 296(15) of the NYSHRL, *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020), also survives.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. More specifically, the following claims must be and are DISMISSED:

(1) Whitfield's First Amendment retaliation claims against the individual Defendants;

(2) His Fourteenth Amendment discrimination claims; and

(3) Any New York State Correction Law claim.

Whitfield's other claims — namely, his First Amendment retaliation claim against the City and his NYSHRL and NYCHRL claims against all Defendants — survive.

Additionally, the Court declines to *sua sponte* grant Whitfield leave to amend his dismissed claims. Although leave to amend a pleading should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam), "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, Whitfield has neither sought leave to amend nor suggested that he possesses any additional facts that could cure the defects in his dismissed claims. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 428 (S.D.N.Y. 2023) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleadings). Furthermore, Whitfield was on notice of the vast majority of Defendants' arguments when he filed the Complaint in response to Defendants' original motion to dismiss, and he was expressly warned that he would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 69; *see Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (cleaned up)). Finally, as to nearly all of Whitfield's dismissed claims (i.e., all but the race discrimination claim), the defects are substantive, so amendment would be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases).

Unless and until the Court orders otherwise, Defendants shall answer Whitfield's remaining claims **within four weeks of the date of this Opinion and Order.**  By separate Order, the Court will schedule an initial pretrial conference to be held thereafter.

The Clerk of Court is directed to terminate ECF Nos. 75 and 83 and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: December 23, 2024
New York, New York

_____
JESSE M. FURMAN
United States District Judge