UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                          :

JOHN DAVID WHITFIELD,                 :

                         :

             Plaintiff,     :

                         :        20-CV-4674 (JMF)

       -v-              :

                         :        <u>OPINION AND ORDER</u>

CITY OF NEW YORK et al.,         :

                         :

            Defendant.   :

                         :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In 2020, Plaintiff John Whitfield, proceeding without counsel, brought claims against the

City of New York and employees of the City's Administration for Children's Services ("ACS")

arising from ACS's rejection of his application to be a Youth Development Specialist.  *See* ECF

No. 1.  After extensive litigation — including an appeal, *see Whitfield v. City of New York*, 96

F.4th 504 (2d Cir. 2024), multiple rounds of motion practice, *see* ECF Nos. 44, 90, and months

of discovery, *see* ECF Nos. 113, 123 — Whitfield retained White, Rose & Hilferty, PC (the

"Firm") as counsel on June 9, 2025, *see* ECF No. 124; *see also* ECF No. 136-1 ("Retainer

Agmt."), § 1.  Soon thereafter, the Firm negotiated a settlement on Whitfield's behalf.  *See* ECF

No. 131.  But almost as quickly, Whitfield's relationship with the Firm soured, prompting him to

fire the Firm and exclude it from the Settlement Agreement.  *See* ECF No. 142 ("Whitfield

Decl."), ¶¶ 24-25; ECF No. 135 ("First Wolnowski Decl."), ¶ 7; ECF No. 146 ("Attys' Reply"),

at 4-5.  More specifically, on August 26, 2025, a week or so after Defendants circulated a draft

Agreement, Whitfield modified its terms to provide that the settlement proceeds be paid directly

to him instead of the Firm and then sent an executed version to Defendants.  *Compare* ECF No.

142-12 at 3-4 ("Initial Settlement Agmt."), *with* ECF No. 142-14 ("Amend. Settlement Agmt."),

at 7-8.[1]  The City, the counterparty to the Agreement, has not yet countersigned, but it concedes

the enforceability of the Settlement "on the terms as negotiated and agreed upon between the

City and Plaintiff's counsel on August 26, 2025."  ECF No. 156 ("Defs.' Ltr.").

This mess has spawned three motions.  First, the Firm moves, pursuant to Local Civil

Rule 1.4, to withdraw as counsel of record for Whitfield and, pursuant to New York law, for the

imposition of a charging and retaining lien for 38% of Whitfield's recovery.  *See* ECF No. 134.

Second, Whitfield cross-moves for sanctions against the Firm and Casey Wolnowski, the Firm

partner assigned to his case.  *See* ECF No. 141.  And finally, Whitfield asks the Court to enforce

the modified Settlement Agreement.  *See id.*  The Court will address these motions in turn.

**THE FIRM'S MOTIONS**

The Court need not dwell long on the Firm's motion to withdraw.  "Courts typically look

to New York Rules of Professional Conduct for guidance on motions to withdraw."  *City Merch.*

*Inc. v. Tian Tian Trading Inc.*, No. 19-CV-9649 (MKV), 2021 WL 119075, at *3 (S.D.N.Y. Jan.

13, 2021) (internal quotation marks omitted).  Under those Rules, "[w]hen a client discharges the

attorney and terminates the attorney-client relationship, withdrawal is mandatory."  *Id.* (citing 22

N.Y.C.R.R. § 1200 (Rule 1.16(b)(3))).  That is the case here.  *See* ECF No. 142-13, at 3-4

("Discharge Ltr."); *see also* ECF No. 148 ("Whitfield Reply"), at 4 (acknowledging that he

terminated counsel and supporting its withdrawal motion).  Moreover, given the posture of the

case, no "compelling circumstances" warrant denying the motion.  *Hung v. Hung*, No. 25-CV-

2427 (JAV), 2026 WL 32923, at *1 (S.D.N.Y. Jan. 6, 2026) (internal quotation marks omitted).

Accordingly, the Firm's motion to withdraw must be and is GRANTED.

---

[1]    References to page numbers in ECF Nos. 142-12 through 14 and 148-1 are to the page
numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

The Firm's motions for charging and retaining liens requires more discussion.  In New York, attorneys have two forms of recourse — other than commencement of a plenary action — to recover for non-payment of fees by a former client: (1) a statutory charging lien, which is governed by Section 475 of the State's Judiciary Law, and (2) a common-law retaining lien.  *See, e.g.*, *Citimortgage, Inc. v. Nimkoff*, 138 N.Y.S.3d 190, 193 (N.Y. App. Div. 2d Dep't 2020).  A "charging lien is a specific attachment to the funds which constitute the client's recovery," *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585 (LJL), 2022 WL 17961594, at *2 (S.D.N.Y. Dec. 27, 2022) (quoting *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 754 N.Y.S.2d 220, 224 (N.Y. App. Div. 1st Dep't 2002)), whereas a retaining lien "is a 'security interest' . . . in 'all client papers and property, including money, that come into the attorney's possession in the course of employment,'" *Villar v. City of New York*, 546 F. Supp. 3d 280, 290 (S.D.N.Y. 2021) (quoting *Resol. Tr. Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991)).  Both are enforceable in federal court.  *See, e.g.*, *Villar*, 546 F. Supp. at 289-91, 95.  "If an attorney is discharged 'with cause,'" however, "'the attorney has no right'" to either lien.  *Id.* at 291 (quoting *Teichner ex rel. Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 979 (1985)).

The dispute between Whitfield and the Firm turns principally on whether the Firm was discharged for cause.  *Compare, e.g.*, ECF No. 144 ("Whitfield Mem."), at 3-6, *with* Attys' Reply 13-15.  Citing the termination letter that he sent the firm on August 26, 2025, *see* Discharge Ltr.; Whitfield Decl. ¶ 24, Whitfield contends that he fired the firm "for cause" due to "well over a dozen" violations of the Rules of Professional Conduct, Whitfield Mem. 3.[2]  In

---

[2]    Whitfield also accuses the Firm of violating the Rules of Professional Conduct *after* discharge, *see* ECF No. 144 ("Whitfield Mem."), at 8-9, but "those allegations . . . are not a bar to the [Firm's] entitlement to retaining and charging liens for the legal work performed *prior to* the discharge," *Maher v. Quality Bus Serv., LLC*, 42 N.Y.S.3d 43, 46 (N.Y. App. Div. 2d Dep't 2016) (emphasis added).

brief, he contends that the Firm (1) pursued an "excessive and illegal" 38% contingency fee; (2) lied to induce him to accept that fee; and (3) improperly delayed resolution of the case and otherwise pressured him to accept the fee. *See* Discharge Ltr.; Whitfield Mem. 3-7; Whitfield Reply 6-8. In support of these allegations, Whitfield submits extensive email communications, *see* ECF Nos. 142-1 through 11; Discharge Ltr., as well as transcripts of recorded conversations, *see* ECF Nos. 148-1 through 4, with the Firm concerning their fee negotiations and settlement discussions. The undisputed record, however, does not support Whitfield's claims.[3]

To begin, although a 38% contingency fee is higher than the "typical fee of one-third in civil rights cases," *Pardovani v. Crown Bldg. Maint. Co.*, No. 15-CV-9065 (SHS), 2023 WL 5744283, at *3 (S.D.N.Y. Sept. 6, 2023) (collecting cases), it is not excessive or illegal as a matter of law, *see, e.g.*, *In re Lawrence*, 24 N.Y.3d 320, 337, 339-41 (2014) (upholding a retainer agreement with a 40% contingency fee); *Quinones v. Police Dep't of City of New York,* No. 10-CV-6195 (JGK) (JLC), 2012 WL 2148171, at *8 n.7 (S.D.N.Y. Apr. 12, 2012) ("[T]here does not appear to be anything necessarily improper in a 40 percent contingency fee under Rule 1.5 of the New York Rules of Professional Conduct, at least in certain circumstances." (collecting cases)), *report and recommendation adopted*, 2012 WL 2149572 (S.D.N.Y. June 13, 2012). The fact that the Firm negotiated the settlement relatively quickly after joining the litigation does not call for a different conclusion. Unlike the lawyer in *In re Fisher*, 840 N.Y.S.2d 401 (N.Y. App. Div. 2d Dep't 2007), on which Whitfield heavily relies, *see* Whitfield Mem. 4, 7-8; Whitfield Reply 7; *see also* Discharge Ltr. 3, the Firm entered the fray here after *years* of litigation and had

---

[3] "[I]n general," New York law requires an evidentiary hearing "to determine whether a client has cause for discharging an attorney." *Rasmy v. Diederich*, No. 24-3117-CV, 2025 WL 3552719, at *3 (2d Cir. Dec. 11, 2025) (summary order). But neither Whitfield nor the Firm has requested a hearing. Moreover, the Court finds that "the question of cause can be resolved on the record," so a hearing is "unnecessary." *Id.* (cleaned up).

no reason to believe when it signed on that Defendants would settle, let alone as swiftly as they did, *see* ECF No. 145 ("Second Wolnowski Decl."), ¶ 6.  Accordingly, to the extent that Whitfield's allegations of "cause" rest on the purported illegality of the Firm's contingency fee, they fall short.

Whitfield's remaining arguments fare no better.  First, Whitfield contends that the Firm lied by stating that accepting a lower contingency fee here could impact its ability to secure judicial approval of 40% fee arrangements in the future.  *See* Whitfield Decl. ¶¶ 11-14; Whitfield Reply 5 n.4, 8; *see also* ECF No. 148-1, at 5-10 (reproducing the relevant conversation with counsel).  But courts do actually use the rates "customarily charged for similar services in the same locality" in determining the amount of a charging lien.  *Rasmy v. Diederich*, No. 24-3117-CV, 2025 WL 3552719, at *4 (2d Cir. Dec. 11, 2025) (summary order) (quoting *Smith v. Boscov's Dep't Store*, 596 N.Y.S.2d 575, 576 (N.Y. App. Div. 3d Dep't 1993)); *see also, e.g.*, *Khudai v. Akamai Techs.*, No. 20-CV-3686 (JHR) (JLC), 2023 WL 7174616, at *5 (S.D.N.Y. Nov. 1, 2023), *report and recommendation adopted*, 2024 WL 2046052 (S.D.N.Y. May 8, 2024).  Thus, the Court sees no impropriety in the Firm's representations.

Second, Whitfield claims that the Firm pressured him to accept the contingency fee, including by threatening to withdraw when he renewed his objections to the fee and delaying the execution of the Settlement.  Whitfield Mem. 5; Whitfield Decl. ¶¶ 22-24.  But there is "no evidence that [the Firm] breached the trust and confidence so crucial to the attorney-client relationship to justify extinguishing its charging lien."  *Chen v. LJC Trading New York, Inc.*, No. 19-CV-3276 (SJF) (AKT), 2020 WL 10574176, at *7 (E.D.N.Y. Nov. 20, 2020).  Instead, the record reveals a generally respectful give and take between Whitfield and the Firm — in which Whitfield more than held his own — as the two negotiated their relationship and the Firm's fees.

*See, e.g.*, ECF Nos. 142-4, 148-1, 142-6, 148-2 through 4, 142-10 through 11.  The Firm's most aggressive conduct occurred when a named partner initially referred to Whitfield's renewed objection to the fee as "nonsense" and offered to withdraw as counsel and release any lien.  *See* ECF No. 142-7.  But without more, that partner's behavior does not constitute just cause for the Firm's termination.  *See Chen*, 2020 WL 10574176, at *7 ("Cases where courts found counsel to have been discharged for cause involved situations where counsel concealed information from their clients, utilized abusive language, interfered with their clients' rights to settle, and threatened to improperly withdraw from the case." (collecting cases)); *cf. Schreiber v. Friedman*, No. 15-CV-6861 (CBA) (CLP), 2022 WL 669461, at *7 (E.D.N.Y. Mar. 7, 2022) (observing that "interfer[ing] with the [client's] right to settle . . . or vindicate [attorney] interests in [a] fee dispute . . . by using threats to withdraw as a coercion tactic . . . could be grounds for a finding" of cause (collecting cases)).

Similarly, Whitfield's complaints of delay in finalizing the Settlement are also unfounded.  Wolnowski sent the Agreement to Whitfield upon receiving it on August 15, 2025, *see* ECF No. 142-9, and, within ten days, reviewed and discussed the Agreement with Whitfield, *see* ECF No. 148-3 through 4.  At most, counsel was hashing out minor details, *see* Whitfield Decl. ¶¶ 23-24; ECF No. 148-3 through 4; *but see* First Wolnowski Decl. ¶ 6, when Whitfield decided to discharge the Firm, *see* Whitfield Decl. ¶¶ 24-25.  And there was still plenty of time — over a month and a half — for the parties to move to reopen the case, which, upon notification of the parties' settlement in principle, the Court had dismissed without prejudice to the right to reopen the action no later than October 17, 2025.  *See* ECF No. 132.  These circumstances do not indicate any sort of improper delay.

Finally, Whitfield claims that the Firm is not entitled to a lien because Wolnowski did not enter an appearance until after he discharged the Firm. *See* Whitfield Mem. 9; *see also* ECF No. 133. But that argument is without merit because the lien is sought by the Firm, not Wolnowski. *See* ECF No. 134; ECF No. 138 ("Attys' Mem."), at 3-5. On the same day that Whitfield hired *the Firm* to represent him in this litigation, *see* Retainer Agmt. § 10, a partner at the Firm filed a notice of appearance, *see* ECF No. 124, and the Firm began "participat[ing]" in the "legal proceeding[s]" on Whitfield's behalf, *Minott v. Google LLC*, No. 24-CV-1674 (MMG), 2024 WL 3518525, at *3 (S.D.N.Y. July 24, 2024), *aff'd sub nom. Minott v. Washington L. Firm PLLC*, No. 24-2275, 2025 WL 2111878 (2d Cir. July 29, 2025) (summary order) (quoting *Picciolo v. State*, 732 N.Y.S.2d 60, 62 (N.Y. App. Div. 2d Dep't 2001)); *see also* ECF Nos. 126, 131. *The Firm* then proceeded to negotiate Whitfield's Settlement with the City. In these circumstances, the fact that Wolnowski himself did not enter a notice of appearance until after the Firm was discharged does not prevent a lien from attaching in favor of *the Firm*.

In sum, the Court finds that the Firm was not discharged for cause and, thus, has a right to assert charging and retaining liens. Additionally, Whitfield raises no "special circumstances" that warrant departing from the "general rule" that the Court "may only require a lawyer claiming a lien to turn over papers subject to the lien if the client pays his outstanding charges or posts adequate security for payment." *Gardner-Alfred*, 2022 WL 17961594, at *2 (cleaned up) (quoting *Pomerantz v. Schandler*, 704 F.2d 681, 683 (2d Cir. 1983)); *see also, e.g.*, *Katz v. Image Innovations Holdings, Inc.*, No. 6-CV-3707 (JGK), 2009 WL 1505174, at *2 (S.D.N.Y. May 27, 2009) (granting a retaining lien where, among other things, the previously represented party "d[id] not have an urgent need" for their papers "nor ha[d] they demonstrated an inability to pay the outstanding fees"). Accordingly, the Firm's motions for charging and retaining liens are

GRANTED.  The Court reserves judgment, however, as to the amount of the charging lien (and, by extension, on Whitfield's request for a return of his $25,000 retainer, *see* ECF No. 141; Whitfield Decl. ¶ 5; Whitfield Mem. 8-9, 14-15).  In setting the amount of that lien, the Court must determine the amount that is "fair and reasonable" based not only on "the percentage agreement" between the parties, but also on "the time spent" on the litigation.  *Rasmy*, 2025 WL 3552719, at *4 (quoting *Smith*, 596 N.Y.S.2d at 576); *cf. Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 160-61 (2d Cir. 2006) (vacating a charging lien based on *quantum meruit* as "unfair" because, if the plaintiff had accepted the settlement counsel negotiated, counsel would have netted nothing under its retainer agreement).  The Firm, however, has not submitted any billing records, so the Court is unable to assess the time it spent on the litigation.  Within **two weeks of the date of this Memorandum Opinion and Order**, therefore, the Firm shall file a letter regarding the time it spent on the litigation along with contemporaneous billing records.[4]

## WHITFIELD'S MOTIONS

Whitfield's motions — for sanctions and for enforcement of the modified Settlement Agreement — require little discussion.  First, "[a] court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020).  Invoking this power, Whitfield urges the Court to impose sanctions on the Firm and Wolnowski for (1) filing a baseless motion for charging and retaining liens; and (2) falsely claiming that Whitfield executed

---

[4]      In light of the fact that the Court is not setting the amount of the charging lien at this time, it need not consider Whitfield's argument that he "rescinded and did not ratify the contingency fee agreement."  Whitfield Mem. 7.  That said, "[a] party to a contract cannot unilaterally alter the contract's terms without the other party's consent." *Int'l Techs. Mktg. Inc. v. Verint Sys., Ltd.*, No. 15-CV-2457 (GHW), 2019 WL 8806219, at *1 (S.D.N.Y. Mar. 18, 2019); *see also Battat v. Rejwan*, 222 N.Y.S.3d 612, 615 (N.Y. App. Div. 2d Dep't 2024).

the Settlement Agreement of his own accord without the Firm's knowledge.  *See* Whitfield Mem. 8, 10-15; Whitfield Reply 5-6.  In light of the Court's discussion above, however, the Firm's motion for charging and retaining liens was plainly not baseless or "brought in bad faith." *Checkmate.com, Inc. v. Vasan*, No. 25-CV-3181 (JMF), 2026 WL 310656, at *2 (S.D.N.Y. Feb. 5, 2026) (cleaned up).  The same is true for the Firm's contention that, following discharge, Whitfield executed the Settlement Agreement on his own "[u]nbeknownst to the firm."  First Wolnowski Decl. ¶ 7; *see also* Second Wolnowski Decl. ¶¶ 18-20.  As the Firm argues, *see* Attys' Reply 8, nothing in Whitfield's discharge letter renders that contention entirely devoid of a factual basis.  For these reasons, Whitfield's motion for sanctions — including any referral to the Court's Grievance Committee — must be and is DENIED.

Second, in light of the City's concessions regarding the enforceability of the Settlement Agreement as negotiated with the Firm, *see* Defs.' Ltr., Whitfield's motion to enforce is GRANTED — except to the extent that Whitfield's modifications purported to make the disputed proceeds (i.e., 38% of the gross settlement amount less Whitfield's $25,000 refundable retainer, *see* Retainer Agmt. § 2; Attys' Reply 12) payable to Whitfield instead of to the Firm. *See also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2021 WL 3671440, at *4 (S.D.N.Y. Aug. 17, 2021) ("It is well established that '[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.'" (quoting *Mtgs & Exp'tns Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974))).  In light of that, Defendants shall send to Whitfield all payments required by the Settlement Agreement — except for the amount in dispute between Whitfield and the Firm — **within thirty days of the date of this Memorandum Opinion and Order**.  As to the amount in dispute, Defendants may move, pursuant to Rule 67(a) of the Federal Rules of Civil Procedure,

to deposit the disputed balance with the Court and be relieved of any further responsibility over the funds at issue.  *See, e.g.*, *Kamel v. Prisco*, No. 23-CV-33 (JLR), 2025 WL 315890, at *1 (S.D.N.Y. Jan. 28, 2025) (ordering that the disputed amount of the judgment be deposited pursuant to Rule 67 pending resolution of a charging lien dispute).

**CONCLUSION**

For the foregoing reasons, the Firm's motions to withdraw and for charging and retaining liens are GRANTED.  Whitfield's motion to enforce the amended Settlement Agreement is GRANTED in part and DENIED in part, and his motion for sanctions is DENIED.

The Clerk of Court is directed to terminate ECF Nos. 134 and 141.

SO ORDERED.

Dated: February 27, 2026
      New York, New York

JESSE M. FURMAN
United States District Judge

10