UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN DAVID WHITFIELD, Plaintiff, | | 20-CV-4674 (JMF) |
| -v- | | |
| CITY OF NEW YORK et al., Defendant. | | <u>MEMORANDUM OPINION AND ORDER</u> |

JESSE M. FURMAN, United States District Judge:

On February 27, 2026, the Court entered an Opinion and Order, familiarity with which is presumed, resolving three motions arising from a breakdown in relations between Plaintiff John David Whitfield and his former counsel, White, Rose & Hilferty, PC (the "Firm"). *See* ECF No. 157 ("Op."). As relevant here, the Court held that Whitfield had discharged the Firm without cause — just "a week or so" after Defendants had circulated the draft of a settlement agreement that the Firm had negotiated on his behalf — and that the Firm is entitled to charging and retaining liens on that basis. *Id.* at 1, 7-8. The Court reserved judgment, however, on the amount of the charging lien and, by extension, on Whitfield's request for the return of his $25,000 retainer. *See id.* at 8. To more effectively "determine the amount that is fair and reasonable," the Court ordered the Firm to "file a letter regarding the time it spent on the litigation along with contemporaneous billing records." *Id.* (internal quotation marks omitted). In the meantime, it granted Defendants leave to deposit into the Court's registry $28,200, which is the "amount in dispute" between Whitfield and the Firm, and it declared that the funds would be held "pending the resolution of the Firm's charging lien motion." ECF No. 165; *see* ECF No. 159.

On March 13, 2026, the Firm submitted its time records and a letter in support of its fee. *See* ECF No. 160 ("Firm Ltr."); ECF No. 160-1 ("Wolnowski Aff."); ECF No. 160-2 ("Time Records"). The Firm requests that the Court calculate the amount owed by either (1) awarding the contractually agreed-upon 38% contingency fee, which — because the settlement was for $140,000 — would entitle the Firm to $53,200; or (2) utilizing the lodestar method, which produces a total of $65,131 by multiplying the 57.34 hours reflected in the Firm's timesheets by the hourly rates recited in its retainer agreement. *See* Firm Ltr. 2-3. Whitfield opposes both of the Firm's proposals. *See* ECF No. 163 ("Pl.'s Ltr."). Upon review of the parties' submissions, and for the reasons that follow, the Court declines to adopt either of the Firm's proposed measures. Instead, it fixes the amount of the lien at $35,000 — twenty-five percent of the $140,000 settlement — and directs disbursement of the deposited funds accordingly.

**LEGAL STANDARDS**

Under New York law, "[w]hen a client discharges an attorney without cause, the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement." *Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 457-58 (1989); *accord Teichner ex rel. Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 979 (1985) (noting that "[a] client has an absolute right to discharge an attorney at any time" and that, "[i]f the discharge is without cause before the completion of services, then the amount of the attorney's compensation must be determined on a quantum meruit basis"). That is so "even where the attorney discharged without fault was employed under a contingent fee contract." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004) (quoting *Smith v. Boscov's Dep't Store*, 192 A.D.2d 949, 950 (3d Dep't 1993)).

In determining the amount a discharged attorney is due, the terms of the parties' contingent fee agreement are "one factor that may be taken into account" but are "not to be considered the dispositive factor." *Smith*, 192 A.D.2d at 950-51. Instead, a court must also consider "the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved and amounts customarily charged for similar services in the same locality," *id.* at 951, as well as "the contingent nature of the representation," "the results achieved by the attorney before discharge," and "the client's actual chance of success at the time the attorney was discharged," *Universal Acupuncture*, 370 F.3d at 265 (citations omitted); *see also Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) ("[T]he overriding criterion for determining the amount of a charging lien is that it be 'fair.'" (quoting *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (1993))). Ultimately, "the determination of an appropriate sum for an attorney's charging lien is committed to the sound discretion of the trial court," which "is not required to precisely spell out how it weighed the various factors making up the fee allowed." *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2015 U.S. Dist. LEXIS 189008, at *23-24 (S.D.N.Y. Mar. 23, 2015) (internal quotation marks and citations omitted).

**DISCUSSION**

As noted, the Firm proposes two methods to calculate the fees it is owed: "the contracted-for contingency percentage" or "based upon the lodestar method." Firm Ltr. 1. In the Court's judgment, neither method yields the fair and reasonable value of the services rendered.

The Court begins with the Firm's request for the 38% contingency fee set forth in its retainer agreement. *See* Firm Ltr. 1-2. In support of that request, the Firm relies on authority asserting that "'where a client enters into a contingent fee agreement with an attorney, and subsequently, without discharging the attorney, settles the case directly with the defendant, the

attorney may assert his statutory lien against the settlement proceeds, and collect the contracted-for percentage from that recovery.'" *Id.* at 2 (quoting *Santos v. E T & K Foods, Inc.*, No. 16-CV-7107 (DLI) (VMS), 2019 U.S. Dist. LEXIS 31581, at *37 (E.D.N.Y. Feb. 26, 2019)). But that rule applies only when a client settles "*without discharging the attorney*," *id.* (emphasis added); it has no purchase where, as here, the client discharged the attorney beforehand. Whitfield is therefore correct that the Firm is not entitled to the 38% contingency fee as a matter of course. *See* Pl.'s Ltr. 1-3. At the same time, the Court rejects his allegations of bad faith and unenforceability. *See id.* at 2 (arguing that "no valid contingency fee agreement existed" because he "explicitly objected to the 38% provision after discovering that it had been procured through misrepresentation and overreaching, . . . was missing a required clause, and" needed to "be revised"); *id.* at 3 (suggesting that the 38% contingency agreement is unenforceable under New York law because "[a]warding a $53,200 fee for these limited services would violate the strong public policy against excessive attorney fees" (internal quotation marks omitted)). Indeed, the Court previously rejected Whitfield's contentions that the agreement was procured by misrepresentation and provides for an excessive fee. *See* Op. 4-6. Thus, while the Court declines to award the Firm 38% of the settlement, the agreed-upon percentage is "one factor" to be weighed among others in determining the proper amount. *Smith*, 192 A.D.2d at 950.

The Court also rejects the Firm's alternative invitation to "utilize the lodestar method in assessing the attorneys' fees amount." Firm Ltr. 2. As a preliminary matter, the lodestar method involves "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.*; *see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 238 (E.D.N.Y. 2025) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008)). To reach its proposed lodestar calculation of $65,131, the Firm claims to

have expended 57.34 hours litigating this matter. *See* Firm Ltr. 3; *see also* Wolnowski Aff. ¶¶ 4-5; Time Records 1-3. It argues that the Court should look to the parties' retainer agreement to establish a reasonable hourly rate for each recorded time entry — specifically, "$1150/hour for work performed by partners, $900 for work performed by senior associates, $800/hour for work performed by associates, and $200/hour for work performed by legal assistants, paralegals, legal interns, and non-lawyers." Firm Ltr. 3. The Firm's calculation, however, is unreasonably inflated. Of the 57.34 hours recorded on this matter, only 18.76 arose before Whitfield discharged the Firm on August 26, 2025. *See* Time Records 1-3; ECF No. 142-13. The remaining 38.58 hours were spent drafting the Firm's motions against Whitfield and preparing its fee letter, but work of that kind is "not in furtherance of obtaining a favorable judgment on behalf of" the client and cannot be charged to him. *Stair v. Calhoun*, 722 F. Supp. 2d 258, 271 (E.D.N.Y. 2010). Moreover, the Firm's rates exceed the hourly amounts typically awarded to civil-rights practitioners in this Circuit. *See, e.g.*, *Lilly v. City of New York*, 934 F.3d 222, 231-33 (2d Cir. 2019) (affirming a $450 hourly rate for an experienced practitioner who sought $600 to $625); *Rubin,* 763 F. Supp. 3d at 244 (reducing a partner's rate from $1,185 to $650).

Setting aside both of the Firm's proposals leaves the Court to fix the amount of the lien by weighing the factors set forth above. Several of those factors support a favorable fee award for the Firm. First, and most importantly, "the results achieved" favors the Firm. *Smith*, 192 A.D.2d at 951. The Firm negotiated a $140,000 recovery within ten weeks of being retained, and the Court has since recognized the "enforceability of the Settlement Agreement as negotiated." Op. 9. That sum is particularly meaningful in context, as it represents the only amount that Whitfield ever recovered in a case that he had been litigating for five years. Second, the Court recognizes that Whitfield's "actual chance of success at the time the [Firm] was

discharged" was at its maximum given that a negotiated settlement was already in hand. *Universal Acupuncture*, 370 F.3d at 265; *see* Op. 1-2, 6. And third, the Court recognizes "the contingent nature of the representation," *Universal Acupuncture*, 370 F.3d at 265, which the Firm assumed despite the attendant risk of nonpayment. Although Whitfield now contests the validity of that contingency agreement, the Court has already concluded that it was "not excessive or illegal as a matter of law." Op. 4. These factors favor an award in excess of the lodestar amount even after adjusting for both the hours that the Firm may charge to Whitfield and the reasonableness of the Firm's rates.

On the flip side, other factors call for a discount from the 38% that the Firm seeks. First, "the nature of the litigation, the difficulty of the case, [and] the time spent" were not major impositions on the Firm. *Smith*, 192 A.D.2d at 951. Indeed, as noted, the Firm spent only 18.76 hours over ten weeks on a case that settled quickly after it began negotiating on Whitfield's behalf. Second, the Firm entered the case late in its lifecycle. By the time the Firm was retained, Whitfield had litigated the case on his own for five years, through discovery and a successful appeal, *see* Op. 1, and the Firm cannot claim credit for that ground-setting work. Third, and relatedly, because the Firm's involvement was so late and its engagement so brief, the risk that it ultimately bore under the contingency agreement was limited. These factors do not preclude the Firm from recovering altogether, but they do counsel in favor of a reduced fee award. Specifically, weighing all of the relevant considerations and exercising its discretion, the Court concludes that twenty-five percent of the settlement, or $35,000, is a fair and reasonable amount for the Firm's charging lien.

Whitfield's remaining arguments — that the Time Records contain "[i]mplausible and [u]nreliable" entries, are not "contemporaneous," and must be accompanied by "declarations

from the attorneys whose work is reflected" — do not call for a different conclusion. Pl.'s Ltr. 4-5. Not only are the Time Records affirmed as "contemporaneous billing records" under penalty of perjury, *see* Wolnowski Aff. ¶ 5, but they also clearly record the date, the timekeeper, the time expended, and the nature of each task, *see* Time Records 1-3. To the extent that Whitfield insists on seeing the underlying source material rather than an exported spreadsheet, it is well settled in this Circuit that "New York's more liberal rule allowing reconstructed records should apply" where, as here, the right to a fee arises under state law. *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 147 (2d Cir. 2014). To be sure, the entries are terse, and some appear out of chronological order, but there is no indication that the entries themselves were fabricated. Nor does the absence of declarations from the Firm's other attorneys, whose pre-discharge time totals a mere 2.25 hours, warrant the adverse inference Whitfield requests. Finally, Whitfield's argument that Casey Wolnowski, his former counsel in this matter, "[l]acks [s]tanding" to seek fees on behalf of the Firm because only the attorney of record may assert a charging lien, *see* Pl.'s Ltr. 5, is without merit "because the lien is sought by the Firm, not Wolnowski," Op. 7.

**CONCLUSION**

For the foregoing reasons, the value of the Firm's charging lien is fixed at $35,000, which is an amount equivalent to twenty-five percent of the settlement. Because that amount exceeds the $25,000 retainer, which the retainer agreement makes refundable only "upon receipt of" a larger contingency fee, Firm Ltr. 3-4, Whitfield's request for the return of the retainer is DENIED, and the retainer is credited against the fee. Accordingly, the Clerk of Court shall disburse the $28,200 deposited by Defendants pursuant to the Court's March 18, 2026 Order, *see* ECF No. 165, as follows: $10,000 to the Firm and $18,200 to Plaintiff (with any interest earned

on the amount deposited divided proportionally). Whitfield's requests for discovery and for an evidentiary hearing are DENIED as moot in light of this Memorandum Opinion and Order.

As Whitfield, who is proceeding without counsel, previously consented to electronic service via the ECF system, *see* ECF No. 19, there is no need to mail a copy of this Memorandum Opinion and Order to him.

SO ORDERED.

Dated: November 18, 2026
New York, New York

JESSE M. FURMAN
United States District Judge